484 . MORROW'S ESTATE (NO. 1).

no room for doubt that the erasure and superscription thereon were made at Mrs. Morrow's suggestion before execution.

3. The suggestion of defective proof of execution is also without merit. The surviving witness explained very fully and intelligently the circumstances attending the execution, and this with a clear proof of the handwriting of the deceased witness, filled the statutory requirement. If more be required it may be found in the admission of the execution of the codicil which amounted to a republication of the original will.

It follows:

1. That the blank space in question is immaterial in this contest;

2. That on presumption and direct proof the erasure was made before execution of the will;

3. That proof of execution was in compliance with the statutory requirement; and

4. That consequently the appeal from probate must be dismissed.

*Error assigned* was decree dismissing the appeal.

*Morton Hunter*, with him *W. A. Hudson* and *Joseph Howley*, for appellant.—The will was not signed at the end thereof: Baker's App., 107 Pa. 381; Younger v. Duffie, 94 N. Y. 535.

*Frank W. Smith*, with him *James S. Young* and *William H. Dodds*, for appellee.

Per CURIAM, January 5, 1903:

The decree is affirmed on the opinion of the court below.

---

204     484
29 SC   108

## Morrow's Estate (No. 2).

*Will—Gift to charity—Revocation.*

Where a testatrix gives a legacy to a charitable institution and divides the remainder of her estate among six charities, share and share alike, and six years afterwards executes a codicil revoking the legacy to the charitable institution, and dividing the residue of her estate into seven portions, giving one to a stepson, and the remaining six to the six charities men-

tioned in the residuary clause of the will, the gift to the charities is not rendered void by the fact that the codicil was executed within thirty days prior to the decedent's death.

Argued Oct. 31, 1902.  Appeal, No. 111, Oct. T., 1902, by Frank Lewis Bridges, from decree of O. C. Allegheny Co., Feb. T., 1902, No. 75, dismissing exceptions to adjudication in estate of Nancy A. Morrow.  Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ.  Affirmed.

Exceptions to adjudication.

HAWKINS, P. J., filed an opinion, the material portions of which were as follows:

1. The first question involved in this matter is whether or not certain charitable bequests were rendered void because of a codicil made within thirty days before testatrix's death.  The facts are these:

By will dated July 25, 1894, Mrs. Morrow, after bequests of $300 to the Uniondale cemetery for the purpose of keeping her lot in good condition, and $500 to the Allegheny Day Nursery, directed that the remainder of her estate should be divided among six specified charities, and two days before her death made the following codicil:

"Codicil made this 19th Day of December, 1900, in which I revoke the bequest of five hundred dollars to the Allegheny Day Nursery, and desire and order my executors to add this to the remainder of my estate to be divided as above ordered. . . . And I further desire and order that the remainder of my estate may be divided into seven instead of six shares and that one share shall be given to my Stepson Robert H. Morrow on condition that he use it properly and shall not oppose the distribution of my estate in accordance with the aforesaid and annexed codicil.  I refer to the six shares mentioned in the 13th line of the aforesaid will which I wish to change to seven."

It is contended on behalf of the next of kin of testatrix that the effect of this codicil was to make (a) "a new fund;" and (b) a new bequest within thirty days of her death and therefore by force of the act of 1855 avoid the charities.

## OPINION.

This case is not distinguishable in principle from Sloan's

App., 168 Pa. 422. The testator there made a gift to a charity, and fifteen months afterwards, within thirty days of his death, by codicil modified it to the extent of life estates to two persons, and at their death, the principal to this charity; and though the subject was introduced by a clause, " I hereby annul and revoke the bequest" to the charity, and "instead thereof I give and bequeath," it was held that notwithstanding the use of these words, the codicil did not revoke the gift. " What the testator did, and all that he intended to do," said the court, "was to change the time of payment of the bequest so as to give the interest to the persons named in the codicil while they lived. This is not a revocation. The fact that the testator called it by that name does not make it so. Revoke means recall, to take back, to repeal. Annul means to abrogate, to make void. The codicil did not recall nor make void the bequest in any particular, except as to the time of payment and this it changed. . . . It really diminishes the value of the gift to the orphanage for the benefit of the annuitants, and so falls within the purview of the rule declared in Carl's App., 106 Pa. 635." So here the only substantial change made by the codicil so far as the charities were concerned lies in diminution of their bequest. It is true the residue was increased by the revocation of a special legacy, but the amount of this increase was far less than the loss which resulted to the charities from the division of the residuary estate "into seven instead of six shares," and is therefore not a factor in the matter. The real test in cases like the present is whether or not a charitable bequest is within the purpose of the act of 1855 to prevent undue religious influence in the making of wills. If the gift to charity is in fact made within thirty days of testator's death, undue influence is assumed and the gift is declared " void," but otherwise is presumed valid. The original will of Mrs. Morrow was made so long before her death that there can of course be no question of any undue influence, and none could have been exercised within thirty days of her death because she had long before that specified these charities as objects of her bounty, and so far as appears she had no intention of striking them out. The same charities continued until her death objects of her bounty and residuary legatees. The codicil, it is true, diminished the amount which she had originally expressed an

intention they should have; "instead of" the whole, they were to receive only the six sevenths of the residuary estate, but what remained passed, because it was given, by the original will only. There is a division of the residuary estate into seven instead of six in the codicil, and the only attempted disposition to Robert H. Morrow implies that no other change was intended. It would have been vain and useless to revoke only to give again and there was neither in fact, nor law, a revocation. Accordingly, "the expression 'instead of' excludes the idea of revocation in its technical sense," said the court in Sloan's App., supra, "and is equivalent to a declaration that in such particulars as a codicil differs from the bequest it is to take the place of, or to be instead of, the bequest." This is in accordance with the established rule not to disturb the dispositions of the original will more than is absolutely necessary for the purpose of giving effect to the codicil: Reichard's App., 116 Pa. 232; and it is clear that the only purpose of this codicil was to revoke a special legacy and make Robert H. Morrow one of the residuary legatees.

*Error assigned* was in dismissing exceptions to adjudication.

*Morton Hunter*, with him *W. A. Hudson* and *Joseph Howley*, for appellant.

*Frank W. Smith*, with him *William H. Dodds* and *James S. Young*, for appellee.

Per Curiam, January 5, 1903:

The decree is affirmed on the part of the opinion of the court below relating to the question involved in this appeal.