## COMMONWEALTH TRUST CO. OF PITTSBURGH et al. v. UNITED STATES (two cases).

### Civ. Nos. 7333, 7343.

United States District Court
W. D. Pennsylvania.

April 6, 1951.

John A. McCann, A. M. Oliver, Pittsburgh, Pa., for plaintiffs.

Leland T. Atherton, U. S. Atty. Gen.'s Office, Washington, D. C., for defendant.

GOURLEY, District Judge.

In connection with Civil Action No. 7333, government counsel has taken exception to

the order entered July 13, 1949 which permitted the filing of an amended complaint.

The government contends:

(1) The statute of limitations bars the amended complaint since it sets up a new cause of action.

(2) The original complaint is fatally defective in that:

(a) It does not set forth that the tax collector, to whom the income tax was paid, was dead at the time the proceeding was filed.

(b) It does not set forth sufficient allegations of fact to establish the jurisdiction of the Court.

In view thereof, comment should be made relative thereto.

It is a matter of common knowledge that the Collector of Internal Revenue, to whom the tax was paid in this district, has died.

No useful purpose could have been served by setting forth in the original complaint facts of which the court had judicial knowledge.

I am cognizant of the fact that under Section 24(20) of the Judicial Code, as amended, 28 U.S.C.A. § 41(20) [1948 Revised Judicial Code, 28 U.S.C.A. § 1346], suit against the United States to recover internal revenue taxes wrongfully collected, in excess of $10,000, will not lie in the District Court unless the overpayment was collected by a collector who could have been sued personally but who, when the proceeding began, was dead or out of office. Lowe Brothers Co. v. United States, 304 U.S. 302, 58 S.Ct. 896, 82 L.Ed. 1362.

The fact that the United States is a proper party defendant obviates the necessity of making specific reference to the Collector of Internal Revenue. United States v. Pacific Electric Ry. Co., 9 Cir., 157 F.2d 902, certiorari denied 330 U.S. 849, 67 S.Ct. 1094, 91 L.Ed. 1293; Powell v. United States, 9 Cir., 123 F.2d 472.

I believe the original complaint was sufficient to inform the government as to the nature of the claim upon which the plaintiff supported its right to recover. The statutory provisions of the Judicial Code, § 24(20), 28 U.S.C.A. § 41(20) has been satisfactorily met. Edwards et al. v. United States, 9 Cir., 163 F.2d 268; United States v. A. S. Kreider Co., 313 U.S. 443, 61 S.Ct. 1007, 85 L.Ed. 1447.

The power of the federal courts to permit amendment of pleadings as to form, at any stage of a case, is to be liberally construed to avoid technical delay in determination of cases on their merits. United States v. Koike, 9 Cir., 164 F.2d 155.

Since the amended complaint was nothing more than a more detailed statement of the allegations which appear in the original complaint, and it did not lay the ground for a new and separate cause of action, separate and apart from that set forth in the original complaint, but was merely explanatory thereof, the government's objection has absolutely no merit.

This proceeding involves two suits for the recovery of federal income taxes paid for the taxable year 1941. Civil Action 7333 is for the recovery of $21,407.57, principal amount of tax, plus interest thereon, and Civil Action 7343 is for the recovery of $14,519.51, principal amount of tax, plus interest thereon. The two cases are practically identical in that each involves trusts created by the same donor with the same corporate trustee. The wording of each trust, except for the amounts and names, is substantially identical.

This opinion will, therefore, dispose of both of said claims.

On or about August 22, 1935, John S. Mack, then a resident of McKeesport, Pennsylvania, created two trusts—one in behalf of J. Gordon Mack, the other in behalf of James S. Mack. On March 5, 1941, the taxpayer, as trustee, sold for the account of the trust for J. Gordon Mack 1,050 shares of G. C. Murphy Company common stock at a gross selling price of $61,950, and on October 6, 1941 sold an additional 605 shares of the same company stock at a gross selling price of $43,045.75. On March 5, 1941 the taxpayer, as trustee, sold for the account of the trust for James S. Mack 1,450 shares of the G. C. Murphy Company common stock at a gross selling price of $85,550, and on October 6, 1941

sold an additional 895 shares of the same company stock at a gross selling price of $63,679.25.

All of these shares had previously been included as assets of the estate of John S. Mack, deceased, the grantor of these trusts, at an agreed valuation of $72.25 a share as of the date of his death for federal estate tax purposes.

In filing the federal income tax returns for the year 1941, the taxpayer contends it eroneously treated the computation of the tax on the basis of the value of the assets at the date of acquisition by the grantor of said trust estates.

However, it is contended the correct basis for the computation of the 1941 federal income taxes in each trust estate should have been the fair market value of said assets at the time of death of the grantor.

If the latter basis is correct, the taxpayer would be entitled to recover in each action since the basis or the fair market value of the assets on September 27, 1940 was greater than the amount realized from the sale of the assets, which would create a capital loss. While if the former basis is correct, the taxpayer would not be entitled to recover in either action since the basis or the cost to the grantor, John S. Mack, on the date of acquisition was less than the amount realized from the sale of the assets, which would create a capital gain.

The question to be resolved is definite and limited.

Both actions involve the question whether the grantor's cost or the fair market value at the date of the grantor's death of certain securities transferred by inter vivos irrevocable trust should be used for the purpose of computing gain on the sale of the securities by the trustee after the grantor's death.

The provisions of the Internal Revenue Code which relate to the taxability of trusts for income tax purposes, and as they apply to this proceeding, are Sections 161 and 162, 26 U.S.C.A. §§ 161 and 162.

It will be seen from reading the provisions of Section 161(a) of the Internal Revenue Code that the taxes imposed by the Income Tax Chapter of the Code upon individuals also apply to the income of estates or of any kind of property held in trust, including income accumulated in trust for the benefit of persons with contingent interests, and income accumulated or held for future distribution under the terms of the will or trust; income which is to be distributed currently by the fiduciary to the beneficiaries, and income which, in the discretion of the fiduciary, may be either distributed to the beneficiaries or accumulated. Paragraph (b) of Section 161 provides that the tax shall be computed upon the net income of the estate or trust and shall be paid by the fiduciary.

The trust instruments here involved do not provide for distribution of capital gains. They are retained by the trustee.

As gain or loss from the sale of capital assets held by trusts is taxable as in the case of individuals, reference must be made to the provisions of Section 117 of the Internal Revenue Code, 26 U.S.C.A. § 117, to determine how such gains and losses are treated. This provision of the Internal Revenue Code defines capital assets. This definition will be found in paragraph (a) of Section 117. That same paragraph of Section 117 will show how short-term and long-term capital gain and losses are determined in the case of estates and trusts. Gains realized by the trustee upon the sale of capital assets (securities held by the trustee) in trust for the required period set forth in Section 117 of the Internal Revenue Code are taxed to the trustee at the capital gains rates, because gains realized from the sale of capital assets of a trust are usually not distributed to the beneficiaries named in the trust instruments.

The taxpayer urges that the basis to be applied, for the purpose of computing gain or loss on the sales made in 1941, is governed by Section 113(a) (5) of the Internal Revenue Code, 26 U.S.C.A. § 113(a) (5). This section provides, inter alia, that in the case of property transferred in trust, wherein the settlor at all times prior to his death reserves the right to revoke the trust, the basis of such property, in the hands of the persons entitled under the terms of the trust instrument to the property after the settlor's death shall, after

such death, be the same as if the trust instrument had been a will executed on the day of the settlor's death.

The government contends the trust agreements, and their supplements, did not give the settlor the right to revoke or terminate said trusts and, therefore, the provisions of Section 113(a) (3) of the Internal Revenue Code, 26 U.S.C.A. § 113(a) (3) are applicable, which provide, inter alia, that in a transfer in trust after December 31, 1920, if the property was acquired after December 31, 1920, the basis shall be the same as it would be in the hands of the grantor.

The decisive factor in determining whether Section 113(a) (5) or Section 113(a) (3) of the Internal Revenue Code shall be made applicable to the said sales depends on the construction to be placed on the original trust instrument and the provisions of the first supplemental agreement, which in both actions is phrased identically.

They provide, inter alia, as follows: "During the lifetime of the Grantor the Trustee shall pay to John Gordon Mack, son of the Grantor, so much of the net income therefrom and so much of the principal thereof as the Grantor may, in his sole and absolute discretion, from time to time direct. Any income not so directed to be distributed shall be accumulated by the Trustee and shall be paid to John Gordon Mack at the death of the Grantor, free and discharged of the trust. Should John Gordon Mack predecease the Grantor, then the Trustee shall thereafter pay during the lifetime of the Grantor so much of the principal thereof, as the Grantor may from time to time in his sole and absolute discretion direct, to such member or members of the families of John Gordon Mack or of the Grantor, exclusive of the Grantor himself, as the Grantor may from time to time, in his sole and absolute discretion appoint, and any undistributed portion of the net income shall be accumulated by the Trustee and shall be paid at the death of the Grantor to the then living children and then living issue of deceased children of John Gordon Mack in equal shares, the issue of deceased children to take per stirpes, and in default of surviving children and grandchildren of John Gordon Mack, such ac-cumulated income shall be paid at the death of the Grantor to the surviving heirs at law of the Grantor, in accordance with the Intestate Laws of the Commonwealth of Pennsylvania."

In each of these trust instruments the grantor retained the sole and absolute discretion from time to time during his lifetime to direct payment of income and principal. In addition, each instrument contained provision, effective during the lifetime of the grantor upon the death of the principal beneficiary, giving the grantor sole and absolute discretion to direct payment of income and principal to members of the respective families of the grantor or to his beneficiary, exclusive of the grantor himself. Paragraph 2(b) of each instrument provides that grantor's wife, if she survive him, has the sole and absolute discretion from time to time to direct distribution to the principal beneficiary of the income and up to fifty per cent of the principal. Paragraph 3 of each instrument provides a fixed schedule for distribution of principal and income effective upon the death of both the grantor and the principal beneficiary.

All that the grantor did was to reserve in himself and his wife during their lifetime the power to direct distribution of both income and principal. Upon the death of the named beneficiary, the grantor could designate other beneficiaries, both as to principal and income. The trust instruments do not contain any provision whereby the right was reserved to the grantor to alter, amend, or revoke the trust. The supplemental agreements dated February 26, 1937, each contained the following: "Whereas, even though none of said agreements contained the reservation of the power to alter, amend or revoke, the parties have nevertheless agreed that the Grantor may have reserved to himself an additional right not specified in said agreements in view of the fact that the contemplated reservation does not affect any substantial provision of the agreements."

Then followed the new reservation which was merely the right to name a new corporate trustee.

Can it be said, from a reading of the agreement and supplemental agreement, that the settlor retained the right to revoke the trusts?

As the language of the trust instruments does not reserve to the grantor the power to revoke them expressly, the taxpayer contends that the grantor did reserve the substantial equivalent of the power to terminate, which in him amounted to a power to revoke.

True enough, if in the exercise of his discretion the grantor saw fit to distribute not only the entire income but the entire principal to his sons, the effect of such a distribution would be to terminate the trust instruments.

■ While it may be that the power to revoke includes the power to terminate, it does not follow that, conversely the power to terminate includes the power to revoke. According to Webster's New International Dictionary (2d ed.) unabridged, these words have the following definitions:

Revoke: To recall. To annul by recalling or taking back; to repeal; to take back; to reassume; to recover; to draw back. To restore to use or operation.

Terminate: To put an end to; to make to cease; to end. To come to a limit in time; to end; close; to have its end; final part, or outcome.

The taxpayer places considerable emphasis on the case of Commissioner of Internal Revenue v. Estate of Holmes, 326 U.S. 480, 66 S.Ct. 257, 90 L.Ed. 228, to sustain the view that the power to terminate these trusts should be treated as a power to revoke within the meaning of Section 113(a) (5). In that case the decedent, as trustee, was authorized in his discretion either to distribute or to accumulate the income. He reserved to himself the power to terminate any or all of the trusts and to distribute the principal and accumulated income to the beneficiaries then entitled to receive it. The Supreme Court held that under Section 811(d) (2) of the Internal Revenue Code, 26 U.S.C.A. § 811(d) (2) for the purpose of the federal estate tax, the value of the property so transferred by the

decedent was includable in his taxable gross estate, as an interest whereof the enjoyment was subject, at the date of his death, to change through exercise of the power to alter, amend, or revoke.

■ Whether or not there is any complete correlation between the provisions of the Internal Revenue Code relating to estate tax and the provisions thereof relating to the income tax, it is manifest that the phrase "alter, amend, or revoke" in Section 811(d) (2) is much broader than the words "to revoke" in Section 113(a) (5). Porter v. Commissioner of Internal Revenue, 288 U.S. 436, 443, 53 S.Ct. 451, 77 L.Ed. 880.

Thus, where a testator merely changed the time of payment of a bequest, it was not a revocation though it was so called in the will. In re Morrow's Estate, No. 2, 204 Pa. 484, 54 A. 342.

Since Congress by Section 805 of the Revenue Act of 1936 saw fit to add the words "or terminate" to the language of Section 302(d) (1) of the Revenue Act of 1926, now Section 811(d) (1) of the Internal Revenue Code, 26 U.S.C.A. § 811(d) (1), in respect to transfers made after June 22, 1936, for estate tax purposes, but did not make a corresponding change in the language of the income tax provisions, it follows that the language of Section 113(a) (5) of the Internal Revenue Code relating to income tax should not be read as if the words "or terminate" were included therein.

■ Although there may be a limited comparability between the estate and gift tax provisions, Estate of Sanford v. Commissioner of Internal Revenue, 308 U.S. 39, 60 S.Ct. 51, 84 L.Ed. 20; Smith v. Shaughnessy, 318 U.S. 176, 63 S.Ct. 545, 87 L.Ed. 690, there is no such parallel with the income tax title. Estate of Douglass v. Commissioner of Internal Revenue, 2 T.C. 487, affirmed 3 Cir., 143 F.2d 961.

■ Where Congress has drawn a distinction, however nice, it is not proper for the courts to obliterate it. Helvering v. Wood, 309 U.S. 344, 347, 60 S.Ct. 551, 84 L.Ed. 796.

Since Congress deemed it advisable to make the revision of the estate tax statute, but did not make a similar revision of the income tax statute, it appears that Congress did not consider any revision of the statute relating to the basis for income tax purposes necessary because these two statutes were obviously not intended by Congress to be consistent.

Moreover, when Congress by Section 143 of the Revenue Act of 1942, amended the provisions of Section 113(a) (2) and (3) of the Internal Revenue Code, and by Section 144 of the same Act made a slight change in the provisions of Section 113(a) (5) of the Internal Revenue Code, it did not change the language of Section 113(a) (5) of the Code to conform to its change in Section 811(d) (1) of the Internal Revenue Code so as to add the words "or terminate" after the words "to revoke" as appears in Section 113(a) (5) of the Code. It thus again demonstrated that the language of Section 113(a) (5) which the taxpayer believes should be interpreted to include the expression "or terminate" was sufficiently clear to require no further clarification or modification.

The trust agreements and their supplements are not ambiguous. It is clear to me that the grantor did not reserve the right to revoke either trust, either expressly or by implication. As a result thereof, the gain or loss from the sale of the trust assets must be calculated by reference to the provisions of Section 113(a) (3) of the Internal Revenue Code, basis or value at the date of acquisition by the grantor rathter than under the provisions of Section 113(a) (5) of the Internal Revenue Code, basis or value at the time of grantor's death.

The United States Supreme Court has recently enunciated the doctrine of a rigid and literal application of the provisions of the Internal Revenue Code even though the equities may call for a construction of wider latitude. United States v. Lewis, 71 S.Ct. 522.

The taxpayer is not entitled to recover and judgment must be entered in favor of the United States of America.

An appropriate order is entered.