## Smith v. Villanova Homes, Inc.

598

*Leonard F. Markel, Jr.*, for plaintiffs.

*Daniel B. Brandschain*, for defendant.

FORREST, J., May 1, 1961.—The preliminary objections to the complaint in this case raise the question of whether a buyer in a written agreement for the construction and sale of a house and lot who elected, by the express provision of the contract, to terminate the same, has a cause of action on a clause in the contract which provides for a weekly payment by the seller "until final settlement is made."

In the case of a demurrer, every material and relevant fact well pleaded is to be taken as true: Yania v. Bigan, 397 Pa. 316 (1959). For present purposes, the facts may be stated as follows:

On June 27, 1960, defendant, Villanova Homes, Inc., entered into an agreement to sell a certain lot with house to be erected thereon, in accordance with certain plans and specifications. Settlement was expressly stated to be made:

"8. . . . not later than September 1, 1960. Seller agrees to pay buyer $50 per week for each week after September 1, 1960 until final settlement is made. . . .

"13. If seller shall default in performing any covenant, term or condition of this agreement, and said default shall continue for ten calendar days after written notice by buyer to seller of such default, buyer may *terminate* this agreement by written notice to seller, and *in such event* seller shall return to buyer the sum or sums paid on account of the purchase price, without interest, and *this agreement shall thereupon become cancelled, null and void, and seller shall have no further liability whatsoever to buyer.* . . .

"14. If for any reason seller is unable to construct or complete said premises or make title as herein provided, seller shall return to buyer the sum or sums paid on account of the purchase price, without interest, and this agreement shall thereupon become cancelled,

null and void, and seller shall have no further liability whatsoever to buyer." (Italics supplied.)

Defendant did not *begin* construction until after September 1, 1960. Before and after that date, plaintiffs demanded that defendant proceed with construction at a reasonable rate of progress, but defendant failed to do so.

On or about November 10, 1960, the parties entered into an amendment of the agreement so as to provide, paragraph 27, that the house was to be "fully completed . . . and suitable for immediate occupancy by buyer on or before January 15, 1961.

"28. In the event that said lot and the improvements to be erected thereon are not so fully completed in every respect and suitable for such immediate occupancy on or before January 15, 1961, or in the event that settlement is not made by seller on or before such date, buyer shall be under no obligation to purchase said lot and improvements to be erected thereon, and all down money shall be returned immediately to buyer on demand. In such event, buyer shall have the following options: (a) to treat this agreement as terminated; (b) to keep this agreement in full force and effect and to extend the time set forth above to such date as the buyer may determine.

"29. Time is of the essence of this agreement.

"30. Paragraph . . . 14 of the Agreement of June 27, 1960, . . .(s) deleted . . .

"31. The agreement of sale dated June 27, 1960, shall continue in full force and effect, except where inconsistent with the within amendment, in which case this amendment shall control."

Defendant did not complete construction on or before January 15, 1961. On January 16, 1961, plaintiffs notified defendant, by letter, that they "elect to treat the agreement of sale as amended, . . . as terminated as of this date." The letter made it plain that

plaintiffs were not abandoning their claim of $50 per week for each week after September 1, 1960. This claim covering the period September 1, 1960, to January 16, 1961, or 19 weeks at $50 per week, amounts to $950. It appears that defendant returned the down money to plaintiffs, there not being any claim therefor.

Defendant contends that when plaintiffs terminated the agreement, they ended it, and, ending it, they ended any right or claim derived from it. Webster's New International Dictionary, 2d ed., unabridged, defines "terminate" as "To put an end to; to make to cease; to end; . . . to come to a limit in time; . . . to have its end, final part, or outcome": Commonwealth Trust Co. of Pittsburgh v. U. S., 96 F. Supp. 712, 717 (1951). See also Black's Law Dictionary; Towne v. Towne, 117 Mont. 453, 159 P. 2d 352, 357; Prime's Petition, 335 Pa. 218 at 222 (1939).

It is sufficiently clear that the phrase "treat this agreement as terminated," as found in the agreement as amended in the instant case, did not leave the seller's obligation to pay $50 per week undisturbed. Paragraph 13 of the agreement, which, significantly, was not deleted by the amendments, expressly provides that upon termiantion of the agreement by the buyer by reason of seller's default, seller shall return the down money "and this agreement shall thereupon become cancelled, null and void, and seller shall have no further liability whatsoever to buyer."

The demurrer should be sustained for the above reason.

Since it appears that plaintiffs cannot amend their complaint so as to state a cause of action, the case is ripe for final judgment.

And now, May 1, 1961, the preliminary objections to plaintiffs' complaint are sustained. Upon payment of his proper costs, the prothonotary is ordered to enter judgment in favor of defendant.