## HOLDERNESS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4078.

Circuit Court of Appeals, Fourth Circuit.

Nov. 9, 1936.

L. P. McLendon, of Durham, N. C. (A. L. Brooks, of Greensboro, N. C., on the brief), for petitioner.

L. W. Post, Sp. Asst. to the Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

The United States Board of Tax Appeals held in this case that the entire corpus of a trust estate created by the decedent in her lifetime should be included in her gross estate, subject to the estate tax under sections 301 (a) and 302 of the Revenue Act of 1926, c. 27, 44 Stat. 69, 26 U. S.C.A. §§ 410 and 411. Specifically it was held that the value of the corpus of the trust estate was includable in the value of the gross estate under section 302 (d), which requires such inclusion—"(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth."

The case is before us on the petition of the administrator of the estate for review.

Emelia S. Sternberger died on January 3, 1929, as the result of an accident. She was then 21 years of age. On December 4, 1926, she had delivered and deposited with the Central Union Trust Company, a New York corporation, the sum of $1,364,-000 under an irrevocable contract and agreement of trust, with the direction to invest the money in income producing securities. The trust was to continue until the death of the survivor of the then living children of her sister. During the life of the grantor, the income from the property was to be paid to her or to other specified persons as she might direct. Provision was also made for the distribution of the income in the event of her death prior to the termination of the trust; and the right was reserved to her to change the proportions and amounts of the income to be paid to any of the specified beneficiaries.

The grantor reserved the right to withdraw from the trust at any time after one year from the date of its creation, securities of a market value of $400,000 at the time of the withdrawal. She also reserved the right to dispose of 25 per cent. of the corpus by her last will and testament. She exercised neither of these rights.

The trust agreement made the following provisions in substance for the distribution of the corpus of the estate upon the termination of the trust:

"(a) One-third to any surviving husband of the grantor;

"(b) Two-thirds equally between any then surviving children of the grantor and the representatives of any deceased child;

"(c) In the event the grantor dies leaving no surviving husband, but leaving a child, children or representatives thereof, the whole of the estate shall be divided among such children and their representatives;

"(d) In case the grantor dies without leaving surviving her a husband, child, or children or representatives of any deceased child, the entire estate shall go to the grantor's sister.

"(e) In case the grantor dies leaving a surviving husband, but no child, children, or representatives of any deceased child, one-third of the estate is to go to the surviving husband and the remainder to the grantor's sister if living at that time;

"(f) If, upon the termination of the trust, the sister should be dead, leaving surviving children or representatives of deceased children, the portion of the estate she would have taken if living upon the termination of the trust shall be divided equally among her children and representatives of deceased children;

"(g) If, upon the termination of the trust the grantor should be living, the whole of the trust estate shall be distributed to the grantor."

The trust instrument further provided: "It is distinctly understood and agreed that the party of the first part (grantor) reserves the right to change by a writing duly executed and delivered to the party of the second part (trustee) the proportions of such estate that shall go to any of the parties named or specified herein."

■ The value of the corpus at the date of death was $2,301,070.04, all of which was held by the Board to enter into the gross estate of the decedent. The administrator concedes that $400,000 thereof was subject to the estate tax because the right to withdraw that sum from the trust was reserved to the grantor; and also concedes that 25 per cent. of the balance of the estate was taxable, because of the reserved power to dispose of that amount by will. But the taxability of the remainder of the estate is contested on the ground that the grantor did not reserve the power to alter, amend, or revoke the trust instrument itself or any of the contingencies upon which any interest in the estate was to vest in any person or class of persons named therein. It is pointed out that while the grantor reserved the right "to change the proportion and amounts of income" payable to any of the beneficiaries, she merely reserved as to the corpus the right "to change * * * the proportions of such estate that shall go to any of the parties named or specified herein." So it is said that the reserved power as to the corpus falls far short of the power to recall the disposition of the property; it does not authorize the exclusion of the designated persons from participation in the estate or the reduction of the share of any one to a nominal amount; but it amounts to nothing more than the power to rearrange the mathematical proportions of the estate among the persons designated to take upon certain contingencies. Hence it is contended that the terms of section 302 (d) of the Revenue Act of 1926 are not applicable, since the enjoyment of the interests of the designated persons in the trust was not subject at the date of the decedent's death "to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke."

The argument is not convincing. It was held in Porter v. Commissioner, 288 U.S. 436, 53 S.Ct. 451, 77 L.Ed. 880, that Congress had the power to include in the taxable gross estate of a decedent all property previously transferred in trust by the decedent, the enjoyment of which remains at the time of his death subject to change by the exercise of a power by himself alone or in conjunction with another, even though he then had no interest in the property or power of enjoyment therein; and that Congress manifested an intention to impose the estate tax upon such a disposition in section 302 (d) of the statute. In that case, the creator of the trust reserved the broad power at any time to alter or modify the trusts in any manner, excepting any change in favor of himself or his estate. The court pointed out that the reservation made the settlor dominant in respect of other dispositions of the property and gave him such a control during his lifetime that his death, like a testamentary disposition, was the source of valuable assurance passing from the dead to the living.

The administrator urges that this case is distinguishable because the settlor therein reserved the power to make a complete revision of all that he had done, excluding only himself as a possible beneficiary, while here the power was reserved only to change the proportionate shares of

certain beneficiaries that could not themselves be changèd. But the difference is not material. Both dispositions are within the terms of the statute. For example, the statute has been held applicable to the corpus of a trust estate created by deed wherein the grantor created an irrevocable trust covering certain property, and provided that the income therefrom should be paid to her during her life and that thereafter, the corpus should be paid to her lawful descendants in such proportions as she should in her last will direct. Commissioner v. Chase National Bank (C.C.A.) 82 F.(2d) 157, certiorari denied, 57 S.Ct. 15, 81 L.Ed. ——, October 12, 1936; 4 L.W. 25. The inclusion of the corpus of the trust in the decedent's gross estate was upheld, since it was clear that up to the time of her death, she could have limited any or all to one of her descendants to a nominal interest in the property, and that only her death, without the exercise of the power, made it certain that her descendants would take in equal shares per stirpes. The reserved power to change the proportions of the corpus to go to the several beneficiaries, contained in the deed under consideration in the pending case, is of equal substance and materiality and entails a like result with respect to the imposition of the federal estate tax.

An additional complaint is lodged against the refusal of the Board to allow the administrator to amend his petition on appeal from the Commissioner's determination in order to include as deductions from the gross estate certain income taxes and administrative expenses which the administrator had paid. If these payments were actually made, they might well have been allowed by the Board; but the motion to amend was not made until after the Board had filed its opinion with decision to be entered under rule 50 of its Code of Procedure and Practice. Under that rule, the parties to a controversy before the Board may submit computations of deficiency or overpayment, in accordance with an opinion previously rendered; but any hearing thereon is to be confined solely to the consideration of the correct computation of the deficiency or overpayment resulting from the decision already made, and no argument will be heard upon or consideration given to issues already disposed of or of any new issues. We do not find in the record any circumstances indicating that the Board abused the power necessarily intrusted to it under 26 U.S.C.A. § 611 to make rules of practice and procedure, to expedite the settlement of controversies submitted to its determination.

Affirmed.