## COMMISSIONER OF INTERNAL REVENUE
## v. ESTATE OF HOLMES.

No. 203. Argued December 12, 1945.—Decided January 2, 1946.

---

*Miss Helen R. Carloss,* with whom *Solicitor General McGrath, Assistant Attorney General Samuel O. Clark, Jr., Messrs. Sewall Key* and *Hilbert P. Zarky* were on the brief, for petitioner.

*Mr. J. V. Wheat,* with whom *Messrs. W. J. Howard* and *J. E. Price* were on the brief, for respondent.

MR. JUSTICE RUTLEDGE delivered the opinion of the Court.

In *White* v. *Poor,* 296 U. S. 98, the question arose whether the power "to alter, amend, or revoke" included

the power of a decedent to terminate a trust so as to bring the trust estate within his gross estate for purposes of the transfer tax imposed by § 302 (d) of the Revenue Act of 1926, c. 27, 44 Stat. 9, 71. The Court, finding it unnecessary to determine that question, disposed of the case upon another ground. The question is here again, this time inescapably, but with a further legislative history and a somewhat different setting of fact.

In 1936, immediately following the *White* decision, Congress revised § 302 (d) by rewriting it into two separate paragraphs relating to "revocable transfers," one applying to transfers after June 22, 1936, the other to transfers on or prior to that date. These are now §§ 811 (d) (1) and (2) of the Internal Revenue Code, which are set forth in the margin.[1] For present purposes the difference claimed to be important consisted in changing the phrase

---

[1] "Sec. 811. Gross Estate. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

"(d) Revocable transfers.—(1) Transfers after June 22, 1936.— To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona-fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death;

"(2) Transfers on or prior to June 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale

"to alter, amend, or revoke" applying to transfers on or prior to June 22, 1936, so that in § 811 (d) (1) it reads "to alter, amend, revoke, or terminate," as to transfers after that date.

However § 811 (d) (2) governs the transfer in this case, since it was made in January, 1935, prior to the dividing date. And the question most mooted has been whether the change was one of substance or was only a clarifying amendment. Put differently, the principal issue is whether power to "alter, amend, or revoke" included power merely to terminate the interests created by the trust or required some further change.

The Tax Court and the Circuit Court of Appeals for the Fifth Circuit, one judge dissenting, have ruled that the change was substantial, not merely declaratory. 3 T. C. 571; 148 F. 2d 740. Accordingly they have held that no deficiency resulted from the taxpayer's failure to include the value of the trust estate created by the decedent Holmes in his gross estate for estate tax purposes. The Commissioner maintains the contrary view. Because of alleged conflict with decisions from other circuits,[2] certiorari was granted. 326 U. S. 702.

We think the Tax Court and the Court of Appeals were in error in their view of the statute's effect.

The facts were stipulated. In so far as necessary to state, they are as follows. On January 20, 1935, by a single trust indenture Holmes created three several irrevocable trusts, one for each of three sons then aged 22, 19 and 14

---

for an adequate and full consideration in money or money's worth. Except in the case of transfers made after June 22, 1936, no interest of the decedent of which he has made a transfer shall be included in the gross estate under paragraph (1) unless it is includible under this paragraph." 26 U. S. C. § 811.

[2] *Mellon* v. *Driscoll*, 117 F. 2d 477 (C. C. A. 3); *Commissioner* v. *Hofheimer's Estate*, 149 F. 2d 733 (C. C. A. 2). See also the authorities cited in note 11 *infra*.

years respectively. Each was given the beneficial interest in one-third of a common fund consisting of corporate stock later converted into other assets.[3] The three trusts were identical in terms. Holmes was named and acted as trustee until his death October 5, 1940.

Each trust was to continue for a period of fifteen years, unless · earlier terminated under power reserved to the grantor, or for a longer term on specified conditions summarized below. But the grantor reserved to himself during his lifetime the power to terminate any or all of the trusts and distribute the principal, with accumulated income, to the beneficiaries then entitled to receive it.[4] He retained no power to revest in himself or his estate any portion of the corpus or income.

Various provisions for disposition over were made to cover contingencies created by the death of beneficiaries during continuance of the trust. Generally stated, the scheme was that the surviving issue of each son should take his share of the corpus, receiving it share and share alike, unconditionally if over 21; as beneficiaries until at-

---

[3] The corporation which had issued the stock was liquidated and the corporate assets were transferred to the trust to replace the stock.

[4] The power of termination was reserved by paragraph eleven of the indenture, as follows:

"Grantor, during his lifetime, and my son or sons herein named, while acting as Trustee hereunder, may, if deemed advisable by them as Trustee, distribute to either of Grantor's children, the whole or any part of the principal of their respective trusts, and their interests thereunder. And Grantor may, during his lifetime, if deemed advisable by him, and my son or sons herein named, while acting as Trustee hereunder, may, if deemed advisable by them as Trustee, terminate either or all of said trusts herein created for the respective benefit of my said sons, and distribute the principal of the trust to the persons entitled to receive the same under the terms hereof on the date of such termination."

It seems questionable on the wording that the grantor's power of termination, like that of his sons, was limited by the clause "while acting as Trustee hereunder." See note 13 and text.

taining that age, if under it. If a son should die without issue, his "share or trust" was to go "pro rata" to the other two sons, or their surviving issue *per stirpes;* if either other son should be dead without issue, the survivor or his issue was to take the whole; and if all the sons should be deceased without issue, whatever might remain in the trust estate was given to the grantor's wife, if living; if not, to her heirs at law. The trust was to terminate in any event upon the death of the last survivor of the three sons and the expiration of twenty-one years thereafter.

The trustee was given broad discretionary power to apply each beneficiary's share of the corpus for his maintenance, welfare, comfort or happiness, with a precatory suggestion of liberality.

The income was subject to spendthrift provisions and discretionary power of accumulation. If not accumulated, it was to be distributed to the beneficiary, preferably in monthly instalments.

The principal contention is that the sum of the various provisions was to create or reserve to the decedent only a power to accelerate in time the enjoyment of the beneficial interests brought into being by the trusts; that these were vested interests; that no power was reserved to revest them or any of them in the donor or his estate or to change or alter them, or the terms of the gifts, in any manner other than by mere acceleration of enjoyment; and that the powers thus reserved are not sufficient to bring the trust estate, or any part of it, within the coverage of § 811 (d) (2).[5]

---

[5] The taxpayer asserts that each son acquired, on execution of the indenture, "a fee simple title to one-third of the trust corpus and income," subject only to the trustee's power of management for 15 years at the most and to the son's living until this power should end. The reserved power of termination, it is said, applies only to the several contingencies which might affect the time of enjoyment, but not enjoyment itself.

This view presupposes two things. One is that termination of contingencies upon which enjoyment is dependent does not "change, alter, or revoke" enjoyment; the other, that the power "to alter, amend, or revoke" specified in § 811 (d) (2) does not include a power to terminate contingencies which accelerate enjoyment, with the effect of making certain that the beneficiary taking will have it rather than others to whom it would or might inure if termination were longer deferred.

One difficulty with respondent's position is in its conception of "enjoyment." More than once recently we have emphasized that "enjoyment" and "enjoy," as used in these and similar statutes, are not terms of art, but connote substantial present economic benefit rather than technical vesting of title or estates. Cf. *United States* v. *Pelzer*, 312 U. S. 399, 403; *Fondren* v. *Commissioner*, 324 U. S. 18, 20; *Commissioner* v. *Disston*, 325 U. S. 442.[6] In this sense it is clear that none of the sons here had a present right to immediate enjoyment of either income or principal, see *Commissioner* v. *Disston, supra,* although each may have been invested with what respondent regards as a "fee simple" in an equitable interest, subject to divestment by the contingency of the beneficiary's death during continuance of the trust. So long as it continued—and it might continue for the life of the survivor of the three sons and 21 years—it could not be said with assurance that any of the sons, or his issue, would come into present enjoyment of his share, or any part of it; for in connection with the possible occurrence of many contingencies, in-

---

[6] It is true that this case is not one involving the taxability of gifts of "future interests in property" as was true of the cases cited. It is likewise true that the laws relating to estate taxes and those relating to gift taxes are not completely reciprocal. *Estate of Sanford* v. *Commissioner*, 308 U. S. 39; *Smith* v. *Shaughnessy*, 318 U. S. 176. But there can be no difference in the meaning of the words "enjoyment" and "enjoy" as they are used in the pertinent statutory provisions respectively.

cluding the grantor's death and his earlier exercise of the power of termination, it is to be recalled that the grantor reserved to himself, while acting as trustee, the power to accumulate the income.

It seems obvious that one who has the power to terminate contingencies upon which the right of enjoyment is staked, so as to make certain that a beneficiary will have it who may never come into it if the power is not exercised, has power which affects not only the time of enjoyment but also the person or persons who may enjoy the donation. More therefore is involved than mere acceleration of the time of enjoyment. The very right of enjoyment is affected, the difference dependent upon the grantor's power being between present substantial benefit and the mere prospect or possibility, even the probability, that one may have it at some uncertain future time or perhaps not at all. A donor who keeps so strong a hold over the actual and immediate enjoyment of what he puts beyond his own power to retake has not divested himself of that degree of control which § 811 (d) (2) requires in order to avoid the tax.

But the respondent relies heavily upon the legislative history and the continued use of "alter, amend, or revoke" in the 1936 revision, which at the same time introduced "or terminate" to govern future transactions, as expressive of intention to differentiate the two classes of transfers. This view puts emphasis on the meaning of "revoke" rather than of "enjoyment," and excludes from that term's scope a power not amounting to more than one of termination.

We think the history gives the opposite story. The 1936 revision resulted from the *White* decision, which raised doubt whether Congress had included the power to terminate in the words "alter, amend, or revoke." To clarify the matter Congress removed all doubt for the future by enacting § 811 (d) (1). At the same time it adopted § 811 (d) (2), which retained the earlier phrasing.

This was from concern that retroactive application of § 811 (d) (1) should not impose taxes on prior transfers not comprehended by the prior law, as the concluding sentence of § 811 (d) (2) shows.[7]   Notwithstanding this and the doubt created by *White* v. *Poor, supra,* the report of the Committee on Ways and Means of the House of Representatives expressly states that the addition of "or terminate" in § 811 (d) (1) was "declaratory of existing law."[8]   Administrative interpretation, including Treasury Regulations, support this view,[9] which also is either followed or indicated in decisions of the Circuit Courts of Appeals, except the one now in review.[10]   As we have pointed out, that view is more consonant with the structure and interpretation given concomitant taxing act provisions.   For all these reasons, we think it must prevail.

---

[7] See note 1.

[8] The report stated: "Another change made in subsection (a) of section 206 has been to expressly include a power to terminate along with the powers to alter, amend, or revoke. In the case of *White* v. *Poor, supra,* the Supreme Court did not pass on the question of whether the power to terminate was included in the language relating to a power 'to alter, amend or revoke.' Since in substance a power to terminate is the equivalent of a power to revoke, this question should be set at rest. Express provision to that effect has been made and it is believed that it is declaratory of existing law." H. Rep. No. 2818, 74th Cong., 2d Sess., 10. The report was issued in connection with H. R. 12,793, of the same session, of which § 206 contained the changes later enacted, without presently material difference, as § 805 of the Revenue Act of 1936, now § 811 (d) of the Code.

[9] See Treasury Regulations 105, § 81.20, stating: "Such addition is considered but declaratory of the meaning of the subdivision prior to the amendment. A power to terminate capable of being so exercised as to revest in the decedent the ownership of the transferred property or an interest therein, or as otherwise to inure to his benefit or the benefit of his estate, is, to that extent, the equivalent of a power to 'revoke,' *and when otherwise so exercisable as to effect a change in the enjoyment,* is the equivalent of a power to 'alter.'" (Emphasis added.)

[10] Cf. the authorities cited in note 11.

Respondent's other contentions require only brief notice. The contingencies here were too numerous and too important in their effects not only upon the time but also upon the right of immediate enjoyment for them to be regarded as trivial or inconsequential, as respondent urges. Decedent's failure to reserve for himself any beneficial interest or power to recapture one is not controlling. *Porter* v. *Commissioner*, 288 U. S. 436. Nor is the fact that he could not select new beneficiaries outside those comprehended by the indenture, and was therefore limited to changing enjoyment among that group.[11]

It seems suggested that the power of termination was reserved to the grantor, not in the capacity of donor, but only in that of trustee, from which the conclusion appears to be drawn that no power of termination was reserved within the meaning of § 811 (d) (2). As we have noted,[12] the eleventh paragraph of the indenture is not wholly clear concerning the premise. But in terms the reservation is to the "Grantor, during his lifetime" and grammatical construction of the second sentence seems to indicate the qualifying clause "while acting as Trustee hereunder" was intended to apply only to the decedent's son or sons acting in that capacity.[13] If the question has been

---

[11] *Chickering* v. *Commissioner*, 118 F. 2d 254; *Commissioner* v. *Hofheimer's Estate*, 149 F. 2d 733; *Commissioner* v. *Bridgeport City Trust Co.*, 124 F. 2d 48; *Guggenheim* v. *Helvering*, 117 F. 2d 469; *Commissioner* v. *Chase National Bank*, 82 F. 2d 157; *Union Trust Co.* v. *Driscoll*, 138 F. 2d 152; *Millard* v. *Maloney*, 121 F. 2d 257; *Mellon* v. *Driscoll*, 117 F. 2d 477; *Holderness* v. *Commissioner*, 86 F. 2d 137.

[12] Note 4.

[13] *Ibid.* The parenthetical phase "(in whatever capacity exercisable)" was added to § 811 (d) (1) at the same time as "or terminate," and possibly also as a consequence of the decision in *White* v. *Poor.* Although the legislative reports are not clear, see H. Rep. No. 2818, 74th Cong., 2d Sess., 9, this change also has been held to have been declaratory of existing law. *Welch* v. *Terhune*, 126 F. 2d 695; *Union Trust Co.* v. *Driscoll*, 138 F. 2d 152; see also Treas. Reg. 105, § 81.20; *Estate of Nettleton* v. *Commissioner*, 4 T. C. 987.

saved, we cannot say upon this language that the grantor did not reserve the power of termination to himself as donor rather than merely as trustee. It is unnecessary therefore to determine whether, if the reservation were different, the variation in wording between §§ 811 (d) (1) and (2) in this respect would be material.[14] We have considered respondent's remaining contentions and find them without merit.

The judgment of the Court of Appeals is reversed and the cause is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE DOUGLAS dissents.

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

---

[14] See the preceding note.