**LOBER et al. v. UNITED STATES.**

No. 49290.

United States Court of Claims.

Decided Dec. 2, 1952.

David Stock, New York City (Ehrich, Stock, Leighton & Holland, New York City, on the brief), for the plaintiffs.

Elizabeth B. Davis, Washington, D. C., Charles S. Lyon, Asst. Atty. Gen. (Andrew D. Sharpe, Special Asst. to the Atty. Gen., was on the brief), for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

MADDEN, Judge.

This is a suit by the executors of Morris Lober to recover certain estate taxes which the Government collected from the estate. They claim that the taxes were computed upon assets which were not properly includible in the estate, for tax purposes. The assets in question were the subject matter of separate trusts, created by Morris Lober in 1924, for his son Robert T. Lober, and in 1929 for his son James Morris Lober and for his daughter, Maxine Lober. These beneficiaries were in early childhood when the trusts were created. Morris Lober did not die until 1942.

Each of the trusts provided that the principal of the trust should be paid over to the beneficiary when he reached the age of twenty-five. Morris Lober, who was himself the trustee of each trust, had the power, according to the trust instrument, in his discretion to accumulate any part of the income until the beneficiary came of age. Either before or after the beneficiary reached majority, the trustee could, in his discretion, pay over a part or all of the principal to the beneficiary. The trust instruments made no provision for a gift over to any one else, in case a beneficiary died before reaching twenty-five, and had not, before his death, received the principal of his fund.

Our question is whether the powers which Morris Lober retained over the assets which he placed in these trusts, the power to accumulate income during the beneficiaries' minority and the power to, in effect, terminate the trust in part or in whole by paying over a part or all of the principal to the beneficiary before he

reached the age of twenty-five, were such elements of control as kept the assets within Morris Lober's estate, for estate tax purposes. Another question will be posed and commented on hereinafter.

Section 811(d) (2) of the Internal Revenue Code, 26 U.S.C.A. § 811(d) (2), provided that there should be included, for estate tax purposes, in the gross estate of a decedent, any property which the decedent had transferred in trust, where the enjoyment of the property was, at the date of the decedent's death, subject to the decedent's power to alter, amend, or revoke the trust. The Supreme Court held, in Commissioner v. Estate of Holmes, 326 U.S. 480, 66 S.Ct. 257, 260, 90 L.Ed. 228, that the termination of a trust was covered by the words "alter, amend, or revoke". The Government urges that the decedent here had the power to terminate the trusts by paying over the trust assets to the beneficiaries at any time before they would have had to be so paid over under the terms of the trust instruments, and that therefore the assets were covered by Section 811(d) (2) as interpreted in the Holmes case.

The plaintiffs distinguish the Holmes case, supra, upon the ground that there the trust instrument provided for a gift over to other persons if a primary beneficiary should not survive the fifteen year period of the trust, and had not received the principal before his death. The gifts over were to the beneficiary's children, if any survived him; if none, to the beneficiary's brothers or their surviving children per stirpes; if none to the settlor's widow, if living; if not to her heirs. In the Holmes case, then, the settlor trustee could, by terminating the trust by the payment over of the principal before the required date, cut off the potential interests of various persons who might have received the property if it had been kept in trust and the beneficiary had died before the time when payment of the principal was mandatory.

～ [1-3] The plaintiffs urge that in the instant case the settlor could, by the premature payment over of the principal, only cut off the chance of the heirs of the beneficiary to enjoy the property, as they would have done if the property had been kept in the trust and the beneficiary had died before reaching the age of twenty-five. We assume, for present purposes that this is true; that the beneficiary had an inheritable interest in the trust *res* so that the right to receive the principal would have passed to his estate, rather than returning to the settlor, which would seem to be the only other possible disposition of it.

In Commissioner v. Holmes, supra, the Supreme Court said:

"It seems obvious that one who has the power to terminate contingencies upon which the right of enjoyment is staked, so as to make certain that a beneficiary will have it who may never come into it if the power is not exercised, has power which affects not only the time of enjoyment but also the person or persons who may enjoy the donation. More therefore is involved than mere acceleration of the time of enjoyment. The very right of enjoyment is affected, the difference dependent upon the grantor's power being be-between present substantial benefit and the mere prospect or possibility, even the probability, that one may have it at some uncertain future time or perhaps not at all. A donor who keeps so strong a hold over the actual and immediate enjoyment of what he puts beyond his own power to retake has not divested himself of that degree of control which § 811(d) (2) requires in order to avoid the tax."

This reasoning seems to us to be conclusive of the instant case. The power of the settlor to pay over the principal was, in truth, the power to determine whether the beneficiary should, or should not, have the enjoyment of the property. As the Supreme Court said, it was not a mere question of acceleration of payment, of whether he should enjoy the property sooner or later, but whether he should enjoy it at all, or not. The identification of a living person with his heirs, as in the Rule in Shelley's Case, or the doctrine of worthier title, has no doubt served some purpose in our land law. But for the practical purpose of

determining whether the creator of a trust has retained enough of the incidents of ownership or control to make it probable that Congress intended to tax the trust *res* as a part of his estate, such an identification lacks reality. A father who has the power to decide that his son should have certain assets to use, enjoy, spend, waste or invest, or to decide that he shall not have them at all for any of these purposes, but that his creditors, his children, wife, or collateral relatives should have them, has a significant control over the assets. We think it is substantially the kind of control which the Supreme Court was dealing with in Commissioner v. Holmes.

We have reached the above conclusion upon the assumption that the beneficiaries had vested interests which would have descended to their heirs had they died before reaching the age of twenty-five. The Government urges that they did not have vested interests, and that the assets would in that case have reverted to the settlor by reason of the failure of the trust. If the Government is right, the trust property was clearly includible in the taxable estate of the settlor. The question is, of course, a question of New York law, and we are uncertain of the answer. Since we have decided the case on another ground, it is not necessary for us to answer the question.

The case of Hays' Estate v. Commissioner, 5 Cir., 181 F.2d 169, involved substantially the same question as the instant case and the United States Court of Appeals for the Fifth Circuit decided that the assets were not includible in the decedent's taxable estate. We regret that we are unable to agree with that decision.

The plaintiffs' petition will be dismissed. It is so ordered.

HOWELL, WHITAKER and LITTLETON, JJ., concur.

JONES, Chief Judge (dissenting in part).

I would not decide this case on the basis stated in the majority opinion. I do not believe the settlor retained the substantial control contemplated by the statute.

If under the New York law, in the event of the death of a beneficiary, the property would revert to the settlor rather than be distributed to the heirs of the deceased beneficiary, the petition should be dismissed; otherwise plaintiff should be allowed to recover.

### Findings of Fact

The court makes findings of fact based upon the facts as stipulated by the parties, the briefs and argument of counsel, as follows:

1. Morris Lober, the decedent, died a resident of the County of Westchester, State of New York, on the 13th day of December, 1942.

2. The will of the decedent, dated and executed November 24, 1936, a true copy of which is attached to the petition herein as Exhibit D thereto, was duly admitted to probate and letters testamentary thereunder were duly issued by the Surrogate's Court of Westchester County, New York, on the 6th day of February, 1943, to Louis Lober, Charles Lober, Alma T. Lober and Max Lober.

3. Louis Lober, Charles Lober, Alma T. Lober and Max Lober acted as executors of the will of said decedent from the 6th day of February 1943 to the 7th day of October 1946. Max Lober died on the 7th day of October 1946. Since the death of said Max Lober the petitioners herein, namely, Louis Lober, Charles Lober and Alma T. Lober have continued to act and are now acting as surviving executors of said will.

4. Decedent on October 31, 1924, by instrument in writing, created a trust for the benefit of his son, Robert T. Lober, consisting of cash in the amount of $742.02 and 75 shares of stock of Importers and Exporters Insurance Company, a true copy of which instrument is annexed to the petition herein as Exhibit A thereto.

5. Decedent on March 15, 1929, by instrument in writing, created a separate trust for the benefit of his son, James Morris Lober, consisting of cash in the amount of $1,325.50 and 25 shares of stock of National Park Bank, a true copy of which instrument is annexed to the petition herein as Exhibit B thereto.

734

6. Decedent on March 18, 1929, by instrument in writing, created a separate trust for the benefit of his daughter, Maxine Lober, consisting of 50 shares of stock of Public National Bank transferred on or about March 18, 1929, and cash transferred on or about March 27, 1929, in the amount of $2,709.00, a true copy of which instrument is annexed to the petition herein as Exhibit C thereto.

7. On August 27, 1934, decedent executed three separate instruments in identical form separately confirming the fact that each of said trusts referred to in paragraphs 4, 5 and 6 hereof had been duly constituted and had been and was irrevocable, true copies of which three instruments are annexed to the petition herein immediately after Exhibits A, B and C thereto.

8. Robert T. Lober, at the time of the creation of the trust for his benefit was the only child of the decedent, Morris Lober. James Morris Lober and Maxine Lober and said Robert T. Lober constituted all the children of the decedent, Morris Lober, at the time of the creation of the trusts for the benefit of James Morris Lober and Maxine Lober. Said three persons at all times subsequent to the creation of said trusts were the only children of the decedent, Morris Lober and said three persons all survived decedent.

9. None of said trusts referred to in paragraphs 4, 5, and 6 hereof was created by the decedent in contemplation of death.

10. On March 14, 1944, Louis Lober, as executor of the Estate of Morris Lober, deceased, paid to the Collector of Internal Revenue at Albany, New York, the amount of $93,642.56 in payment of the estate tax liability on this estate as shown in the estate tax return.

11. By letter dated June 7, 1946, the Internal Revenue Agent in Charge of the Upper New York Division notified the executors of a proposed adjustment to the estate tax liability of this estate. One of such adjustments was the inclusion in the estate of the decedent of the assets of the three trusts created by the decedent, Morris Lober, for his children. The assets of the three trusts were valued by the Internal Revenue Agent as of December 13, 1942 at $128,139.67.

12. On January 17, 1947, plaintiff, Louis Lober as executor of the will of said decedent, signed a waiver of restrictions and consent to assessment and collection of estate tax on said estate in the sum of $109,-917.47 with interest (which resulted from the inclusion of said trust assets and also from other changes in the estate tax schedules as filed) but reserved the right to file a claim for refund on the issue of the propriety of including the assets of said three trusts.

13. On February 20, 1947, plaintiffs, as such executors, paid to the Collector of Internal Revenue at Albany, New York, the sum of $129,261.44, representing the deficiency of $109,917.47, with interest of $19,343.97. A further deficiency was assessed in March 1947 in the amount of $12,166.62, representing the balance of the tentative credit for state estate taxes taken into consideration in arriving at the above-mentioned deficiency, together with interest of $2,183.16. No part of this additional deficiency has been paid by the plaintiffs to the United States or any officer or agency thereof.

14. On April 23, 1947, plaintiff, Louis Lober, as executor of the will of said decedent, duly filed a claim for refund on Form 843 requesting refund of estate tax in the amount of $39,012.19 assessed and collected as aforesaid and interest claimed and collected thereon up to February 19, 1947, in the amount of $6,865.62 or a total of $45,877.81. On or about and under date of September 2, 1947, the Commissioner of Internal Revenue rejected the claim for refund in its entirety.

15. No part of the payment of $129,261.-44 paid on February 20, 1947, as set forth in paragraph 13 hereof, has been refunded to the plaintiffs.

16. If the plaintiffs herein are held entitled to any refund of estate taxes, the parties have agreed that such amount shall be adjusted by credit for state estate and inheritance taxes if plaintiffs establish the payment for credit thereof in accordance

with Section 813(b) of the Internal Revenue Code, 26 U.S.C.A. § 813(b).

### Conclusion of Law

Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that, as a matter of law, the plaintiffs are not entitled to recover, and the petition is therefore dismissed.

Judgment is rendered against plaintiffs for the cost of printing the record herein, the amount thereof to be entered by the clerk and collected by him according to law.