The MICHIGAN TRUST COMPANY, Executor of the Estate of R. Wallace Hook, Plaintiff,

v.

Giles KAVANAGH, Collector of Internal Revenue for the District of Michigan, Substituted by Thomas G. Kavanagh, Jr., Admr., Defendant.

No. 11894.

United States District Court
E. D. Michigan, S. D.

Dec. 30, 1955.

---

Platt W. Dockery, Grand Rapids, Mich., for plaintiff. Warner, Norcross & Judd, Grand Rapids, Mich., of counsel.

H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, Arthur L. Biggins Sp. Assts. to the Atty. Gen., Fred W. Kaess, U. S. Atty., John L. Owen, Asst. U. S. Atty., Detroit, Mich., for defendant.

FREEMAN, District Judge.

This case involves the validity of a federal estate tax deficiency collected from the plaintiff on November 8, 1951, in the amount of $98,036.43.

On April 17, 1931, R. Wallace Hook executed three irrevocable trust indentures for the benefit of his three minor sons, the terms of which trust instruments were identical. He appointed himself trustee and continued to serve as sole trustee until his death on March 8, 1948, when the Michigan Trust Company and Frank E. Seideman became successor trustees pursuant to the terms of said trust, Michigan Trust Company later becoming sole trustee upon Seideman's resignation.

Michigan Trust Company was also appointed executor of the estate of the decedent-donor of these trusts and filed a federal estate tax return with the defendant Collector. The Commissioner of Internal Revenue determined that all the property in the said trusts was taxable to the estate of the decedent-donor

Hook under Section 811(d) (2) of the Internal Revenue Code of 1939, 26 U.S.C. § 811(d) (2). A deficiency in the amount of $88,946.26, plus $9,097.17 interest, was assessed by the defendant and paid, under protest, by the plaintiff.

The respective beneficiaries of these trusts were to receive the trust property after attaining the age of thirty-five years and after the death of the decedent-donor and the property was to revert to the donor if the beneficiaries predeceased him.

The decedent-donor retained substantial control over the trust property during his lifetime. He retained, in addition to usual trustee powers, the right to hold any of the trust property "in his name as trustee, or in his own name, or in the name of a nominee, or in any other manner the trustee may see fit" (Par.Sixteenth), "to exercise in respect of all stocks, bonds or other investments held by the trustee hereunder, all rights, powers and privileges as are or may be lawfully exercised by any person owning similar property in his own right * * " (Par.Seventeenth), and "be the sole and conclusive judge of what is principal and what is income." (Par.Twelfth).

Income derived from the trust fund, after deducting appropriate expenses in connection with the administration of the trust, was to be distributed to the beneficiaries "in such manner or amount and at such times as in the sole discretion of the trustee it may be deemed best." (Par.First).

The provision relating to distribution of the corpus of the trust, which is essential to the determination of the motions at hand, is as follows:

"Seventh: Any provision in this agreement notwithstanding, the Trustee shall have the right in his absolute discretion to distribute in whole or in part, the Trust Property to the Beneficiary at any time and in such manner or amount as he may deem the situation to warrant, it being the intention of the Grantor that while under ordinary circumstances it is not the desire that the Beneficiary come to the ownership of the Trust Property until the happening of all the conditions heretofore provided in that connection, the Trustee shall nevertheless be free to distribute the Trust Property or any part thereof to the Beneficiary at any time or in any manner or amount, should what the Trustee deems a special emergency arise."

In event the corpus of the trust was distributed to the beneficiaries in accordance with the foregoing provisions (Par.Seventh), it was provided that "this trust shall be automatically deemed to be terminated." (Par.Eighth).

Under date of November 8, 1951, plaintiff filed a timely claim for refund. On December 28, 1951, the Michigan Trust Company, as sole trustee of said trust, filed a petition in the Kent County Circuit Court, in Chancery, for construction of these trust instruments and attempted to join as a defendant in those proceedings the defendant Collector Giles Kavanagh to whom the assessed tax deficiency was paid. On motion, Kavanagh was dismissed as a party defendant in the state court suit, in accordance with a federal statute which provides in effect that an officer of the United States may not be sued in a state court without his consent. The state court in that suit entered a decree dated April 8, 1952, which provides in part:

"(b) The power of invasion of the Trustee of each of the said Trusts, exercisable in favor of the life beneficiary of each of said Trusts, in case of a special emergency, as set forth in Paragraph Seventh thereof, is a limited power, exercisable only in case of special emergency; and as such is measured by a definite external standard—to wit, a special emergency occurring to said life beneficiary; and as such the power is subject to the jurisdiction and control of this Court sitting as a Court of Chancery, and the exercise or non-exercise of such power is subject to the review by this Court

as to whether such exercise or non-exercise is a reasonable act on the part of the Trustee;

"(c) No special emergency has been shown by any of the beneficiaries in any year from 1931 to and including the present year."

Both parties have filed motions for partial summary judgment under Rule 56 of the Rules of Civil Procedure, 28 U.S.C. Defendant Collector claims that the property in said trusts was taxable to the Hook estate under Section 811(d) (2) of the Internal Revenue Code of 1939 in that the decedent-donor Hook reserved a power under Paragraph Seventh of the trust indenture "to alter, amend, or revoke" within the meaning of said Section 811(d) (2). Plaintiff claims that the power of invasion under Paragraph Seventh of the trust is a limited power measurable by a definite external standard, that such a limited power is not a power to alter, amend or revoke within the meaning of Section 811 (d) (2) and that the decision of the state court to that effect is binding on this court.

Section 811(d) (2), so far as pertinent here, required inclusion in a decedent's gross estate of the value of all property that the decedent had previously transferred by trust "where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power * * * to alter, amend, or revoke * * *."

The first question presented by these motions is whether the power retained by the decedent-donor Hook, during his lifetime, to distribute the trust corpus under Paragraph Seventh of these trusts is a power to alter, amend or revoke within the meaning of Section 811(d) (2).

█ Plaintiff admits that, if a power of invasion is not circumscribed by a definite external standard, it is tantamount to a power to alter, amend or revoke.

The decedent-donor reserved during his lifetime substantially all the inci-

dents of ownership of the trust property except to revoke the trust and revest title in himself. The beneficiaries had no right to immediate enjoyment of any of the trust property, either income or principal, during the lifetime of the decedent, unless he elected to exercise his reserved power as trustee.

Defendant contends that the test to be applied under controlling case law in determining whether a transfer comes within the provisions of Section 811(d) (2) is: Did the decedent-donor give the beneficiaries a present right to immediate enjoyment of either income or principal?

In the case of Commissioner of Internal Revenue v. Estate of Holmes, 326 U.S. 480, 66 S.Ct. 257, 90 L.Ed. 228, the court held that the power to terminate was the equivalent of power "to alter, amend, or revoke" under Section 811 (d) (2).

In the case of Lober v. U. S., 346 U.S. 335, at page 337, 74 S.Ct. 98, 99, 98 L. Ed. 15, the Supreme Court said:

"We pointed out in the Holmes case that § 811(d) (2) was more concerned with 'present economic benefit' than with 'technical vesting of title or estates.' And the Lober beneficiaries, like the Holmes beneficiaries, were granted no 'present right to immediate enjoyment of either income or principal.' The trust instrument here gave none of Lober's children full 'enjoyment' of the trust property, whether it 'vested' in them or not. To get this full enjoyment they had to wait until they reached the age of twenty-five unless their father sooner gave them the money and stocks by terminating the trust under the power of change he kept to the very date of his death. This father could have given property to his children without reserving in himself any power to change the terms as to the date his gift would be wholly effective, but he did not. What we said in the Holmes case fits this situation too: 'A donor who keeps so strong a hold

over the actual and immediate enjoyment of what he puts beyond his own power to retake has not divested himself of that degree of control which § 811(d) (2) requires in order to avoid the tax.'"

Plaintiff attempts to distinguish the Holmes and Lober cases, supra, on the ground that the donor-trustee in those cases had an unlimited express power of termination which Mr. Justice Black in the Lober case referred to as "crucial," in the following language, 346 U.S. at page 336, 74 S.Ct. at page 99:

"A crucial term of the trust instruments was that Lober could at any time he saw fit turn all or any part of the principal of the trusts over to his children. Thus he could at will reduce the principal or pay it all to the beneficiaries, thereby terminating any trusteeship over it."

Plaintiff urges that no such power is present in the case at bar because the power to invade the trust corpus arises only upon the occurrence of a "special emergency."

The broad scope of decedent-donor's reserved power to invade the corpus under Paragraph Seventh of these trusts is indicated by reiteration of such power, expressed variously (1) "any provision in this agreement notwithstanding," (2) "the trustee shall have the right in his absolute discretion to distribute, in whole or in part, the trust property," (3) "in such manner or amount as he may deem the situation to warrant" and (4) "the trustee shall nevertheless be free to distribute the trust property * * * at any time or in any manner or amount, should what the trustee deems a special emergency arise." It seems clear that he did not intend to limit his discretion to invade by the precatory expression of his declared intention to distribute the corpus "should what the trustee deems a special emergency arise."

■ The court agrees with plaintiff that a power of invasion measurable by a definite external standard is not a power to alter, amend or revoke under Section 811(d) (2). Jennings v. Smith, 2 Cir., 161 F.2d 74, 77. The court does not agree with defendant's contention that the decision in the Lober case impliedly rejects the above rule laid down in the Jennings case. The decisions are not in conflict.

In the Jennings case and numerous other cases cited by plaintiff in the appendix to its brief, the trustee's power to invade the trust corpus is conditioned on something more than what the grantor-trustee deems "a special emergency." Powers of invasion measurable by definite external standards appear to be conditioned on more specific, concrete conditions such as sickness, educational needs, maintenance and support, etc.

For instance, the trust in the Jennings case, supra, empowered the trustee to invade the corpus if the beneficiaries should " 'suffer prolonged illness or be overtaken by financial misfortune which the trustees deem extraordinary.' " The court in that case very properly noted that "the trustees were not free to exercise untrammeled discretion but were to be governed by determinable standards".

■ The power to invade the trust corpus in the instant case is governed by no definite or determinable standard. It is in effect a naked power. These trusts do not contain the required definite standards for the exercise of a power of invasion in order to escape inclusion of the trust property under Section 811(d) (2). Furthermore, the beneficiaries were granted no present right to immediate enjoyment of either income or principal of these trusts.

The decisions in the Holmes and Lober cases, supra, are controlling here and, applying the decisive language in those cases, this court holds that the decedent-donor Hook did not divest himself of that degree of control which Section 811(d) (2) requires in order to avoid the tax.

In reaching this conclusion, the court has not extended the doctrine of Helver-

ing v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, into the estate tax field as plaintiff contends, but rather has applied the doctrine of the Lober case.

It should also be noted that, if the beneficiaries survive the decedent-donor but fail to reach the age of thirty-five, the trust property would go to the surviving children of the beneficiaries; but, upon failure of surviving issue, the estate of the beneficiary would get nothing and the property would then go to others. Hence, the donor-trustee had the power to eliminate contingencies that would affect not only the time of enjoyment, but also the person or persons who might enjoy the property, as in the case of Commissioner v. Estate of Holmes, supra, 326 U.S. 480, at page 487, 66 S.Ct. at page 260, where the court uses the following language:

"It seems obvious that one who has the power to terminate contingencies upon which the right of enjoyment is staked, so as to make certain that a beneficiary will have it who may never come into it if the power is not exercised, has power which affects not only the time of enjoyment but also the person or persons who may enjoy the donation. More therefore is involved than mere acceleration of the time of enjoyment. The very right of enjoyment is affected, the difference dependent upon the grantor's power being between present substantial benefit and the mere prospect or possibility, even the probability, that one may have it at some uncertain future time or perhaps not at all."

The remaining issue involves the question of whether the state court decision is binding on this court. The state court held that the power of invasion under Paragraph Seventh of these trusts was a limited power measurable by a definite external standard and subject to the jurisdiction of such court in chancery. Plaintiff argues that this state court decision is conclusive and binding on this court under the full-faith-and-credit provisions of the Constitution, Article IV, Section 1, and the statute, 28 U.S.C. § 1738, and cites Commissioner of Internal Revenue v. Blair, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465, and a large number of other tax cases in support of the contention that local decisions are also binding in tax cases.

In the Blair case, the Supreme Court held that the validity of a beneficiary's assignment of his interest in the trust property was a question of local law and pointed out that decisions of the state court are also final as to the character of a trust and the nature and extent of the interest of a beneficiary therein.

However, the question in the instant case is whether a statutory standard or criterion laid down by the Internal Revenue Code has been met and not whether a state court decision as to a property right is binding as was the situation in Blair and the other tax cases cited by plaintiff.

 Defendant admits that a state court decision determining property rights as between contesting parties in an adversary proceeding is relevant in a tax case, but contends that such local decision is without force in purporting to decide the existence of a federal criterion in a tax case. In this respect, the court agrees with defendant and holds that the question here involved is whether a statutory standard laid down by the Internal Revenue Code has been met. This is a federal question which a state court is without power to decide.

Therefore, the motion of plaintiff for a partial summary judgment is denied and the motion of defendant for a partial summary judgment is granted. An appropriate order may be presented.