Archbold van BEUREN, Hugh Eustis Paine and J. William Winslow, Executors of the Estate of Mary A. van Beuren, Deceased, Plaintiffs,

v.

Martin M. McLAUGHLIN, former Acting Collector of Internal Revenue for the Collection District of Rhode Island and John A. O'Connell, District Director of Internal Revenue, Providence, Rhode Island, Defendants.

Civ. A. No. 2149.

United States District Court
D. Rhode Island.

April 29, 1958.

Edwards & Angell, Providence, R. I., Frederick Lippitt, Providence, R. I., of counsel, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., William R. Spofford, Philadelphia, Pa., of counsel, for plaintiffs.

Charles K. Rice, Asst. Atty. Gen., James P. Garland, Jerome S. Hertz, Attys., Dept. of Justice, Washington, D. C., Joseph Mainelli, U. S. Atty., Providence, R. I., for defendants.

DAY, District Judge.

This is an action arising under the provisions of Title 28 U.S.C.A. § 1340. Plaintiffs are the duly qualified executors of the estate of Mary A. van Beuren who died on February 21, 1951, domiciled in Rhode Island. The defendant, Martin M. McLaughlin, was the Acting Collector of Internal Revenue for the Collection District of Rhode Island from February 1, 1952 through October 5, 1952, and the defendant, John A. O'Connell, is the Director of Internal Revenue for the District of Rhode Island and has held that office since October 6, 1952.

In their complaint the plaintiffs allege that on May 15, 1952 they timely filed with the defendant, Martin M. McLaughlin, the federal estate tax return for the decedent's estate and at that time paid to him the sum of $1,371,319.86, the amount of the tax shown thereon to be due; that pursuant to the assessment of deficiencies thereafter made they paid to the defendant, John A. O'Connell, on April 22, 1955, an additional tax in the amount of $142,174.79 and interest thereon of $24,286.57, and on September 14, 1955, an additional tax in the amount of $151,515.73 and interest thereon of $29,695.01; that on April 19, 1932, the said

Mary A. van Beuren created an irrevocable inter vivos trust with the Fiduciary Trust Company of New York as trustee; that the fair value of the corpus of said trust at the date of her death was $6,278,445.13; that upon examination of said federal estate tax return, filed by the plaintiffs as aforesaid, the Commissioner of Internal Revenue determined that the decedent had an interest in said trust at her death which was includable in her gross estate for federal estate tax purposes pursuant to the provisions of Section 811(d) of the Internal Revenue Code of 1939 and Section 302(d) of the Revenue Act of 1926, 26 U.S.C.A. § 811(d) which resulted in the assessment of said tax deficiencies paid as aforesaid; that he determined that the taxable value of said interest in said trust was the value of the income of said trust for its duration, i. e., until the death of her husband, Michael M. van Beuren, who was seventy-nine at the date of her death, and computed this value to be $1,182,921.85; that the decedent at her death had no interest or power with respect to said trust which would require the inclusion of any part of said trust in her gross estate and that accordingly the action of the Commissioner in including in said gross estate said sum of $1,182,921.85, or any part thereof, was erroneous; that, in the alternative, if as determined by the Commissioner the value of the income of said trust for its duration was properly includable for federal estate tax purposes, the correct taxable value thereof was $979,080.84 and that the Commissioner erred in including any greater amount in said gross estate; that in the federal estate tax return plaintiffs did not claim any expenses of administration as deductions from the gross estate but expressly reserved the right to do so to the extent that such expenses of administration were not claimed by them and finally allowed as deductions from gross income of the decedent's estate for purposes of federal income tax and that the portion of said expenses for the fiscal years ending January 31, 1952 through January 31, 1955, not claimed and allowed as aforesaid, aggregate $16,682.69; that the plaintiffs have incurred and will incur counsel fees and related expenses in connection with this proceeding which constitute additional administration expenses deductible for federal estate tax purposes; that they have filed timely claims for refund for said taxes alleged to have been erroneously assessed and paid by them on the basis of said determination by the Commissioner which he erroneously disallowed within two years of the commencement of this action; that the plaintiffs have overpaid the federal estate tax liability of said estate in the amount of at least $405,380.84 together with interest thereon in the sum of $53,981.58, and demand judgment against the defendant Martin M. McLaughlin in the sum of $111,690.32 and against the defendant John A. O'Connell in the amount of $347,672.10, or such greater amount as may appear justly due them together with interest and costs.

Defendants in their answer admit the payments of taxes alleged by the plaintiffs, deny that said trust was irrevocable, and aver that the decedent at the time of her death had an interest in said trust that was sufficient to require the inclusion of its value in her gross estate for federal estate tax purposes. However, they admit that the Commissioner of Internal Revenue erred in his computation of its value and that the value thereof for federal estate tax purposes was $979,080.84 instead of $1,182,921.85 as determined by him. They also admit that no deductions for expenses of administration were claimed in the federal estate tax return filed by the plaintiffs and deny for want of information and belief that plaintiffs are entitled to the deduction of said expenses of administration and the expenses of this proceeding. Finally, they deny that the plaintiffs are entitled to any of the relief which they seek.

The plaintiffs have moved for summary judgment in their favor under Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A., and in connection therewith the

parties have by written stipulation agreed as to all the material facts.

In addition the defendants have agreed that expenses of administration in the amount of $16,443.35 and reasonable attorneys' fees and expenses incurred and to be incurred by the plaintiffs in this proceeding constitute additional allowable deductions in computing the federal estate tax liability of the estate of the decedent and that they will be allowed upon submission of proof of the amount thereof at any time prior to the entry of final judgment.

The sole issue, therefore, remaining for determination by me is—was any interest in said trust includable in the gross estate of the decedent for federal estate tax purposes pursuant to the provisions of Section 811(d)(2) of the Internal Revenue Code of 1939 and Section 302(d) of the Revenue Act of 1926. The language of the two sections is identical. The pertinent provision of Section 811 (d) is as follows:

"§ 811 Gross estate

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States— * * *

"(d) Revocable transfers. * *

"(2) * * * To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, * * * "

The trust was created by Mrs. van Beuren on April 19, 1932. By its terms the trust was to continue during her life and that of her husband, Michael van Beuren, and until the death of the survivor of them. The net income thereof was payable in equal shares to the said Michael van Beuren, to her son, Archbold van Beuren, and to her daughter-in-law, Margaret Z. van Beuren. In the event of the death of any of them during the term of the trust, his or her share was to be paid to the survivor or survivors during the remainder of the trust term and in the event of the death of all three before the expiration of the term of the trust, the income was to be paid to the issue of Archbold van Beuren, *per stirpes,* or if he left no issue, to other designated contingent beneficiaries. The agreement creating the trust provided for one trustee, Fiduciary Trust Company of New York.

As executed, the trust agreement contained the following article with respect to change or amendment of its terms:

"Sixteenth. This agreement or any of the terms thereof may be changed or amended during the life of the trust with the consent of the Trustee and adult Beneficiaries or adult Beneficiary then receiving the income by an instrument in writing duly executed by the Trustee and such Beneficiary or Beneficiaries. Provided, however, that no such change or amendment shall effect any revocation, in whole or in part, of the trust hereby created or alter the provision for distribution upon the termination of the trust. Nothing in this agreement contained shall be deemed to vest any interest in the issue or appointee of Archbold van Beuren or in Lydia Strauss or her issue, or in the next of kin of the Grantor prior to the termination of the trust and the said issue and such next of kin shall have no right to object to any change or amendment of this agreement which shall be made and/or executed as herein provided, even though they may be at the time entitled to income under the provisions of Article First hereof."

On July 30, 1932 and December 30, 1946 the corporate trustee and the three adult beneficiaries who were receiving the income executed instruments amending the trust agreement in certain re-

spects. Neither of these instruments was signed by the decedent.

The instrument dated July 30, 1932 related to the employment of investment counsel and has no bearing upon the issue involved herein. The instrument of December 30, 1946 amended the original agreement in four respects. As originally executed the trust agreement reserved to the decedent the right to designate what assets should be purchased and sold for the trust estate and at what prices they could be purchased and sold. Under the amendment effected by this instrument these powers were conferred upon an individual co-trustee for whose appointment this amendment made provision. The right to determine whether trustees' commissions should be charged to income or corpus, originally reserved to the grantor, was conferred by this amendment upon the co-trustees and new provisions made thereby for the compensation of the corporate trustee and for its indemnification with respect to any loss or damage sustained by reason of the making, retention or disposal of any investments and reinvestments in accordance with instructions from the individual co-trustee.

The provision in the 1946 amendment relating to the appointment of an additional trustee was the following:

"4. Article Nineteenth shall be amended to read as follows:

"Nineteenth. There shall be two Trustees hereunder, one of which shall be an individual and one a corporation qualified to act in such capacity under the laws under which it was created and exists. In the first instance the individual Co-Trustee shall be designated by the Grantor by an instrument under her hand and seal, acknowledged in like manner as a deed to be recorded in the State of New York, and the corporate Co-Trustee shall be the Trustee first above named herein.

"The Grantor reserves the right at any time by an instrument under her hand and seal, acknowledged in like manner as a deed to be recorded in the State of New York, to remove any Trustee hereunder from the trusteeship hereunder and to appoint a new Trustee or Trustees in the place of the Trustee or Trustees so removed, and thereupon the Trustee or Trustees so removed shall by proper transfer and delivery vest the trust property in the Trustee or Trustees so appointed. Thereafter such successor or successors shall have all the rights, powers and duties which were granted to or imposed upon the Trustee or Trustees so removed under the provisions of this indenture. Upon making any appointment of a new Trustee, the Grantor may make such provision as she shall think fit in respect to the compensation of the Trustee or Trustees appointed and their successors in office or any of them and shall provide for the payment of any such compensation, whether out of the capital or income as to the Trustees may seem proper. Upon the death of the Grantor the foregoing power of removal and appointment shall vest in Archbold van Beuren for the remainder of the trust term."

On December 31, 1946, the day following the execution of this amendment to Article Nineteenth, the decedent appointed her said son, Archbold van Beuren, as the individual co-trustee and directed that he serve without compensation. This appointment was made in the form and manner provided in said amendment. The provision of Article Nineteenth, as amended, relating to the removal of any trustee is in substantially the same language as that appearing in the original indenture of trust.

Defendants contend that (1) the decedent under the terms of the trust, in her capacity as grantor, held a power to participate with others in the alteration or amendment of the income provisions of the trust and that therefore the value of that income interest was properly includable in her gross estate or (2) if she did not hold such a power directly as

grantor, she had a power to remove the individual co-trustee at will and thereby participate in the exercise of a Section 811(d)(2) power. Plaintiffs on the other hand contend that the decedent had no power to "alter, amend, or revoke" the trust within the meaning of said Section 811(d)(2).

Plaintiffs maintain that the decedent by the provisions of Article Sixteenth conferred the sole power to amend the trust agreement upon the trustee and adult beneficiaries or beneficiary who were or was receiving the income of the trust at the time of any amendment, and that she thereby divested herself of all power to amend its terms either alone or in conjunction with any person. They argue that the words "may be changed or amended * * * with the consent of the Trustee and the adult Beneficiaries or adult Beneficiary" should be construed to mean "may be changed or amended * * * *by* the Trustee and adult Beneficiaries or adult Beneficiary". I believe this would be a strained and unreasonable construction. Had the decedent intended this meaning it would have been simple enough for her to have so stated. Consent, in law, means an agreement to do something proposed by another; an assent to some proposition submitted by another. In my opinion the words "may be changed or amended with the consent of" should be construed to mean that the trust agreement or any of its terms could be amended by the decedent grantor if consent thereto was first given by the trustee and the adult beneficiaries or beneficiary. In other words, it was amendable by the decedent as grantor with their consent.

In determining the proper interpretation of the language quoted above, taken out of the context of said Article Sixteenth, the words of limitation contained in said article are not without significance and are not to be ignored. This limitation reads as follows:

"Provided, however, that no such change or amendment shall effect any revocation, in whole or in part, of the trust hereby created or alter the provision for distribution upon the termination of the trust."

The trust was created by the decedent. The decedent was its donor. Revocation is the act of taking back. She was the only person who could take back or recall the gift which she had made. By this provision she barred herself from revoking or revesting in herself any part of her gift or altering its distribution upon the death of the survivor of herself and her husband, but did not divest herself of her power to control the enjoyment of the income thereof during her lifetime. If she did not intend to reserve this power to herself in conjunction with the trustee and those receiving that income this provision must be regarded as meaningless. This I am unwilling to do.

The fact that she did not sign either of the amending instruments is immaterial. Her signature was not required specifically and apparently neither she nor any of the other parties involved considered it to be necessary. Her action in appointing her son as individual co-trustee on December 31, 1946, the first day following the execution of the 1946 amendment satisfies me that she participated in that amendment. Bearing in mind that the corporate trustee was her appointee and the three adult beneficiaries were her husband, son and daughter-in-law, the conclusion is inescapable that she was aware of and either proposed or gave her prior approval to the amendment that was adopted.

The purpose of Section 302(d) of the Revenue Act of 1926 which is identical with Section 811(d) of the Internal Revenue Code of 1939 is clearly stated in Helvering v. City Bank Farmers Trust Co., 1935, 296 U.S. 85, at page 90, 56 S.Ct. 70, at page 73, 80 L.Ed. 62:

"* * * The purpose of Congress in adding clause (d) to the section as it stood in an earlier act was to prevent avoidance of the tax by the device of joining with the grantor in the exercise of the power of revocation someone who he believed would comply with his wishes.

Congress may well have thought that a beneficiary who was of the grantor's immediate family might be amenable to persuasion or be induced to consent to a revocation in consideration of other expected benefits from the grantor's estate. Congress may adopt a measure reasonably calculated to prevent avoidance of a tax  *  *  * "

While the decedent here did not, as did the grantor in Helvering v. City Bank Farmers Trust Co., reserve the power in conjunction with her trustees and with members of her immediate family to revoke her gift, she did as grantor reserve the power in conjunction with said trustees appointed by her and removable by her at any time and with members of her immediate family to change or amend the terms of the trust insofar as the enjoyment of its income was concerned. By this power as grantor she retained a string on the disposition of that income until her death. For this reason the fair value of the income from the trust for its duration was properly includable in her gross estate under said Section 811(d)(2). Commissioner v. Estate of Holmes, 1946, 326 U.S. 480, 66 S.Ct. 257, 90 L.Ed. 228; Welch v. Terhune, 1 Cir., 1942, 126 F.2d 695, certiorari denied 317 U.S. 644, 63 S.Ct. 37, 87 L.Ed. 519; Commissioner v. Bridgeport City Trust Co., 2 Cir., 1941, 124 F.2d 48, certiorari denied 316 U.S. 672, 62 S.Ct. 1042, 86 L.Ed. 1747.

My conclusion that the decedent as grantor held a power to amend the trust in conjunction with the trustee and beneficiaries or beneficiary makes it unnecessary to consider the alternative contention made by the defendants.

The defendants concede that the Commissioner erred in his valuation of the income of the trust for its duration after decedent's death. They agree that the fair value of that interest was $979,080.-84 instead of $1,182,921.85 as determined by him.

The plaintiffs are entitled to a refund of the amount of the additional taxes which resulted from the inclusion in the gross estate of the decedent of said interest at a greater value than $979,080.84, together with interest thereon. In addition, as stipulated by the parties, they are also entitled to the allowance of said administration expenses amounting to $16,443.35 and the amount of reasonable attorneys' fees and expenses incurred in connection with this proceeding as deductions from said gross estate in determining the federal estate tax liability of the decedent's estate.

Within twenty (20) days from the date hereof the parties will present to me a computation of the amount which the plaintiffs are entitled to recover based upon my finding as above set forth and their stipulation, and thereupon appropriate judgments will be entered with respect to each of the defendants.