Henry B. JOY, Jr. and William C. McMillan, as Executors under the Will of Helen N. Joy, Deceased, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 26810.

United States District Court
E. D. Michigan,
Southern Division.

June 30, 1967.

Marshall Massey and William T. Myers, of Dykema, Wheat, Spencer, Goodnow & Trigg, Detroit, Mich., for plaintiffs.

Lawrence Gubow, U. S. Dist. Atty., Milton J. Trumbauer, Jr., Asst. U. S.

Dist. Atty., Detroit, Mich., Mitchell Rogovin, U. S. Asst. Atty. Gen., Donald R. Anderson, Atty., Dept. of Justice, Washington, D. C., for defendant.

MEMORANDUM OPINION DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR PARTIAL JUDGMENT

MACHROWICZ, District Judge.

This matter is an estate tax refund case commenced by the executors of the estate of Helen N. Joy. The action is presently before the court on cross-motions for summary judgment covering all issues except taxpayers' claim for refund for additional administration expenses incurred by them in prosecuting their primary claim for refund, the allowable amount of which is not presently determinable. A stipulation of facts was filed by the parties on August 1, 1966, and was subsequently amended on December 15, 1966. Briefs were filed and the motions under consideration herein came on for full hearing.

The relevant facts are fairly summarized in the government's brief as follows:

"On June 18, 1948, Mrs. Helen N. Joy created three inter vivos trusts for the benefit of her granddaughters, Joy Lee Peterla (who later changed her name to Peterle), Marian Lee Mikesell, and Eunice Lee Fuller. On November 23, 1948, Mrs. Joy created a fourth inter vivos trust in favor of her grandson, Henry B. Joy III. Each of the four trusts contains substantially similar provisions. Mrs. Joy and her son, Henry B. Joy, Jr., were the original trustees of each trust; and Mrs. Joy served as a trustee of each trust until her death.

"The pertinent trust provisions (exemplified by excerpts from the Peterla Trust) are as follows:

6. So long as Mrs. Peterla shall live, but not after the termination of this trust on December 31, 1963, *the Trustees shall set aside 20% of the net income of the trust and add the same to the principal amount of the trust,* and the same shall thereafter be held as part of such principal and not as undistributed income, and during the same period *the Trustees shall pay out of the remaining 80% of the net income of the trust such amounts for Mrs. Peterla's expenses* or the expenses of her family or household or for a personal allowance to her, or for any of such purposes, *as the Trustees may in their sole discretion deem fit. Any part of such remaining 80% of the net income* not so distributed or used by the Trustees *(which may be called undistributed net income) shall be accumulated and may be invested* from time to time as the Trustees may deem best and after such investment shall continue to be considered and treated as undistributed net income, and *the Trustees may, if in their sole discretion they deem it fit, pay to Mrs. Peterla or for her benefit part or all of the undistributed net income at any time during the period of this trust and of her life.* Upon the termination of this trust on December 31, 1963, as aforesaid, the Trustees shall pay and deliver over to Mrs. Peterla, if she shall then be living, the entire Trust Fund together with all accumulations of undistributed net income and all the cash, securities and properties of which the same shall then consist.

7. In the event of Mrs. Peterla's death before December 31, 1963, then the principal of the Trust Fund and *all accumulations of undistributed net income (all such accumulations to such date being considered principal at such time)* shall continue to be held by the Trustees in trust to pay and deliver the income and principal thereof to such of the following

described persons, that is to say: the surviving husband, if any, of Mrs. Peterla; her issue and the spouses of any deceased issue who either may have died before Mrs. Peterla's death or may die after her death; and any issue of Mrs. Joy and her late husband Henry B. Joy; and in such shares or amounts all as Mrs. Peterla may at any time or times direct or appoint by instrument executed and delivered by her to the Trustees for the purpose, or by her Last Will and Testament duly admitted to probate, the residuary clause in such Will constituting such direction and appointment unless specifically declared to the contrary. Any such direction or appointment so made by Mrs. Peterla by instrument delivered in her lifetime may be altered, amended or revoked by her at any time or times thereafter. (Emphasis added.)

"Under the above terms of each trust, Mrs. Joy provided that, during the life of each grandchild and until the termination of the trust, the trustees were required to add 20 percent of the net trust income to the original principal of the trust 'and the same shall thereafter be held as part of such principal and not as undistributed income.' The remaining 80 percent of the net trust income was payable to the grandchild in 'such amounts * * * as the Trustees may in their sole discretion deem fit.' Any portion of the 80 percent of the net trust income which was not distributed by the trustees to the grandchild, the trustees were required to accumulate as 'undistributed net income'; after investment 'as the Trustees may deem best,' such amounts were still 'to be considered and treated as undistributed net income.' However, the trustees 'if in their sole discretion they deem it fit' could distribute to the grandchild 'part or all of the undistributed net income at any time,' after its accumulation, during the period of the trust and the grandchild's life. If the grandchild was living at the

termination of the trust—December 31, 1963, for the granddaughters' trusts; December 31, 1969, for the grandson's trust—the grandchild was to receive (free of trust) 'the entire Trust Fund together with all accumulations of undistributed net income.' If the grandchild died before the termination of the trust, the trustees were to hold the 'principal of the Trust Fund and all accumulations of undistributed net income (all such accumulations to such date being considered principal at such time)' for the benefit of other persons as designated by the terms of the trust.

"Mrs. Joy died on March 13, 1958, survived by her four grandchildren. On June 11, 1959, Mrs. Joy's executors timely filed a federal estate tax return with the District Director of Internal Revenue in Detroit, Michigan, and reported a tax due of $2,613,238.26, which the executors paid. The estate tax return disclosed the existence of the four trusts for the decedent's grandchildren, but no amount with respect to the trusts was included in the value of the gross estate. On June 29, 1962, pursuant to Sections 2036 and 2038 of the Internal Revenue Code of 1954, the Commissioner of Internal Revenue assessed a deficiency of $614,804.77 tax and $112,989.32 interest against the executors based upon his inclusion in the decedent's gross estate of 80 percent of the value of the four trusts as of the date of Mrs. Joy's death. The executors paid the deficiency of tax and interest and filed a timely claim for its refund, which was disallowed on November 4, 1964.

"At the date of Mrs. Joy's death, the value of the four trusts were:

| Peterle | $414,446.83 |
|---|---|
| Mikesell | 414,446.83 |
| Fuller | 414,446.83 |
| Joy III | 488,847.29 |
| | $ 1,732,187.78 |

The value of the Joy III Trust included 'undistributed net income' (as defined by paragraph 6 of the trust instrument) in the amount of $76,962.67."

During the course of these proceedings, the parties have agreed on certain points, namely that § 2038 of the Internal Revenue Code of 1954 (26 U.S.C. § 2038) applies to the four trusts involved herein and that plaintiffs are entitled to claim a refund for the administration expenses incurred in the prosecution of this claim for refund against which should be set off the amount of tax which would be due the government by including 100% of the value of the "undistributed net income" of $76,962.67 in the Joy III trust. The remaining issues can be summarized as follows: whether § 2036 of the Internal Revenue Code of 1954 (26 U.S.C. § 2036) applies to these four trusts, and if so, how much is required to be included in the gross estate by reason thereof, and finally, how much is required to be included in the gross estate of Mrs. Joy by reason of the conceded applicability of § 2038.

■ The government claims that Mrs. Joy's right to accumulate 80 percent of the trust income as undistributed net income, and her right to distribute that income after its accumulation, were rights "to designate the persons who shall possess or enjoy the property or the income" of the trusts under § 2036(a) (2).[1]  It cites United States v. O'Malley, 383 U.S. 627, 86 S.Ct. 1123, 16 L.Ed.2d 145 (1966) as authority in support of this contention. In that case, the Court had before it the question of whether portions of trust principal representing accumulated income were the subject of a previous transfer by the grantor of the trust so as to bring them within the provisions of the predecessor to § 2036.[2] The grantor in O'Malley had named himself as a co-trustee and exercised the power to accumulate or pay out trust income by accumulating same. Apparently the trustee did not have the discretion to pay out this accumulated income at a later date. The opinion does not specifically state whether the income beneficiaries were the same individuals as the remaindermen, as they are in the case at bar. However, implicit in the language of the Court is that assumption.

The section requires the property to be included not only when the grantor himself has the right to its income but also when he has the right to designate those who may possess and enjoy it. Here Fabrice [the grantor] was empowered, with the other trustees, to distribute the trust income to the income beneficiaries or to accumulate it and add it to the principal, thereby denying to the beneficiaries the privilege of immediate enjoyment and conditioning their eventual enjoyment upon surviving the termination of the trust. This is a significant power * * * and of sufficient substance to be deemed the power to 'designate' within the meaning of [the predecessor to § 2036(a) (2).] 383 U.S. at 631, 86 S.Ct. at 1126.

Conditioning the beneficiaries' eventual enjoyment of the trust property upon surviving the termination of the trust could only arise in a situation where the income beneficiary was also the remainderman. Otherwise his surviving the termination of the trust would have no effect in vesting in him any remainder interests.

Plaintiffs contend in their brief that the Supreme Court misstated the rule in O'Malley in using the language quoted above and that in any event such ruling was dicta because it was not essential to a determination of the dispute before

---

1. The relevant portion of § 2036 reads as follows: The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer * * * by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death * * * the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

2. The Court, in O'Malley, 383 U.S. at 628, n. 1, 86 S.Ct. 1123, indicated that § 2036 is materially the same as its predecessor upon which the Court ruled in that case.

the Court. If, in fact, the Court did misstate the rule, it is up to that Court to correct its own error. It would be presumptuous indeed for a district court to conclude that the United States Supreme Court misstated its ruling in an opinion handed down in 1966, and then proceed to enunciate a different rule which it imagines the Supreme Court must have meant.

With respect to plaintiffs' contention that the above-quoted language is only dicta and hence of no value in determining the issues before this court, a close reading of the entire opinion reveals that the Court carefully considered the same contentions raised herein and Congressional intent in order to reach the ultimate result. It is true that the only disputed issue before the Court was whether the grantor had ever "transferred" the income additions to the trust principal within the meaning of the statute. After determining that he had made such a "transfer" by exercising his retained power to accumulate rather than distribute income, the Court went on to say:

> Under [the predecessor to § 2036], the power over income retained by Fabrice is sufficient to require the inclusion of the original corpus of the trust in his gross estate. The accumulated income added to principal is subject to the same power and is likewise includable. 383 U.S. at 633, 86 S.Ct. at 1127.

This language may not have been required to resolve the very narrow issue presented to the Court. However, it was essential in order to reach the ultimate decision in the case, namely whether the accumulated income added to principal should be included in the grantor's gross estate. Even if this language is dicta, it is the product of such deliberate consideration that this Court feels compelled to apply it to the instant case.

Plaintiffs further argue that the failure of the income beneficiary to survive to the termination of the trust is a contingency beyond the control of the decedent so that the decedent never actually possessed the power alone or in conjunction with the other trustees to designate the persons who would be the actual beneficiaries of the trust. However, persuasive that argument might be in the absence of the *O'Malley* opinion, this court finds *O'Malley* to be controlling in this case and to require the application of § 2036 to the trusts involved herein.

It should be observed that last-cited quotation also disposes of the subsidiary issue presented in connection with § 2036, namely what amount of the trusts involved herein must be included in the grantor's gross estate once it is determined that § 2036 applies to them. The Court in *O'Malley* adopted the undisputed finding of the district court that the power to accumulate income requires the inclusion of the original trust corpus in the grantor's gross estate. It then found that the accumulated income, being subject to the same power as the corpus, is likewise includable. On the basis of *O'Malley*, plaintiffs' contention that the only amount includable in the gross estate under § 2036 is the value at the date of the grantor's death of 80% of the net income of each trust for the remainder of its term must be rejected. The Court finds rather that under § 2036(a)(2), the proper amount includable in Mrs. Joy's gross estate is 80% of the value of the principal of the trusts as of the date of Mrs. Joy's death and the value of all income accumulated in the trusts also as of the date of Mrs. Joy's death.

In view of the disposition of the issues discussed above, it is unnecessary for the court to rule on the amount includable under § 2038.

For the foregoing reasons, the Court hereby denies plaintiffs' motion for partial summary judgment and grants defendant's motion for partial summary judgment. An order may be presented for entry in accordance with this opinion if all parties can agree to the terms thereof. In the event of disagreement, the entry of the order should be noticed for hearing.