E. E. RITTER and the First Huntington National Bank, Co-Executors of the Estate of William McClellan Ritter, II, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 2273.

United States District Court
S. D. West Virginia,
Huntington Division.

Dec. 31, 1968.

Paul S. Hudgins, Hudgins, Coulling & Brewster, Bluefield, W. Va., for plaintiffs.

Milton J. Ferguson, U. S. Atty., Huntington, W. Va., Herbert M. Doster, Atty., Department of Justice, Washington, D. C., Mitchell Rogovin, Asst. Atty. Gen., Department of Justice, Washington, D.C., Benjamin A. Douglas, Atty., Department of Justice, Washington, D. C., for defendant.

CHRISTIE, District Judge:

Plaintiffs bring this action as executors of the estate of William McClellan Ritter, II, to recover an alleged overpayment of estate taxes for which claim for refund has been duly made and disallowed by the Commissioner of Internal Revenue. At issue in this proceeding are questions concerning whether or not the estate of certain trusts established by William McClellan Ritter, II, prior to his death should be included in his gross estate for estate tax purposes, and whether the value of a house purchased subsequent to his death may be included in computing the marital deduction to which the decedent's estate is entitled. The case was submitted to the Court by the parties for decision upon the pleadings, exhibits, interrogatories and requests for admissions and the responses thereto, and the depositions of decedent's wife and father. By stipulation, the parties have agreed that if either or both of the issues involved in this proceeding are resolved in plaintiffs' favor, the amount of the refund for purposes of judgment shall be computed by the defendant, and submitted to plaintiffs' counsel for approval. If the parties are unable to agree upon the amount of the refund, the matter shall be presented to the Court for resolution. If both issues are decided in favor of the defendant, this problem will, of course, not arise.

### STATEMENT OF THE FACTS

Between 1957 and 1959, Ritter established trusts for each of his four children, naming himself as trustee. Included among the powers exercisable by him as trustee for each of the four trusts was the power in his sole discretion to "hold, manage, invest, and reinvest the trust property," to "collect the income thereof," and to expend such "property and income" for the use of the named beneficiary "at any time, to such extent, for such purpose, and in such manner as the Trustee shall determine." And in the exercise of this broad authority, the trust instruments relieved him of the "necessity of obtaining the consent or permission of any person interested therein, or the consent or approval of any court." Other powers provided for in the trust instruments included the discretionary power to apportion receipts and expenses between income and principal. In each of the four trust instruments it was provided that the beneficiary, upon attaining twenty-one years of age, would be entitled to the trust "property and the income therefrom" not previously expended. If the beneficiary died before attaining twenty-one years

of age, the property and income were to be distributed to persons appointed by the beneficiary in his will or if there was no will, to the legal representative of the estate of the beneficiary.

On January 7, 1963, William McClellan Ritter, II, died leaving a will which contained, among other provisions, the following:

"* * * I hereby give, devise and bequeath to my said wife a residence in Huntington, West Virginia, which shall be purchased for her by my Executors, and in that event I hereby give, devise and bequeath to my Executors in order to purchase such residence a sum which shall be adequate, in the discretion of my Executors, to purchase a residence for my wife; and I direct that the title to the residence so purchased shall be taken in fee simple in the name of my wife."

At the time of his death, Ritter resided with his wife in Augusta, Georgia. The wife, Jean Ritter, now Jean Ritter Winslow, chose to purchase a house there rather than to move her family from Augusta to Huntington. In view of this decision, the executors of the estate of the testator brought a suit in the Circuit Court of Cabell County, West Virginia, seeking an adjudication of the status of the bequest above mentioned and a determination as to whether they were authorized thereunder to reimburse the widow for the cost of the residence purchased by her in Augusta. By an order dated September 6, 1963, the Circuit Court held that the executors had the authority to and should reimburse the testator's widow for the amount expended by her for the house in Augusta, and that the amount so expended would be in lieu of an equivalent amount for the purchase of a residence in Huntington, West Virginia. Pursuant to this order, the executors paid $49,-500.00 to Mrs. Winslow to reimburse her for the cost price of the Augusta home. Whether this amount was more or less than she would have been required to pay for comparable property in Huntington is not an issue in the case.

## INCLUSION OF THE TRUSTS IN DECEDENT'S ESTATE FOR ESTATE TAX PURPOSES

Under the provisions of the Internal Revenue Code, an estate tax is imposed upon the transfer of the estate of every decedent and the gross estate, upon which the tax is computed, includes not only the decedent's interest in property at the time of his death, but also, under 26 U.S.C.A. Section 2036, all property

"* * * to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

(1) the possession or enjoyment of, or the right to the income from, the property, or

(2) the right, either alone or in conjunction with any other person, to designate the persons who shall possess or enjoy the property or the income therefrom."

In the instant case the decedent had, by the specific provisions of the trust instrument, given up any personal right which he had to possession or enjoyment of the property or the right to the income from the property. The question remains whether the decedent had, as trustee of the several trusts established for his children, retained the right to designate the persons who would possess or enjoy the property or the income from the property previously transferred in trust. By its terms, the trust was irrevocable and the property would not in any event revert to the settlor's estate since provision was made for the property to pass to the estate of the individual beneficiaries in case of their death before reaching twenty-one years of age. However, the settlor, by appointing himself trustee of the trusts, did retain the power to distribute corpus pri-

or to the termination of the trusts and the power to accumulate and distribute income, and, inasmuch as there was always the possibility that one of the beneficiaries would die prior to reaching twenty-one, it is conceivable that by retaining or distributing income or by retaining or distributing corpus the settlor, in his capacity as trustee, could determine whether the beneficiaries, their estates or such persons as the beneficiaries had appointed by will would possess or enjoy the property or the income from the property transferred to the trusts. The question then is whether such a limited power as was retained by the settlor as trustee of the trusts would bring the trusts into his estate under the provisions of 26 U.S.C.A. Section 2036, for the purposes of determining the amount of the estate tax. Ordinarily in a case such as this a decision would require extensive analysis with respect to the precise effect of the rights retained by the settlor over the property transferred in trust and a comparison of the quality of these rights with those contemplated in Section 2036, but in this instance a case almost precisely in point has been previously decided by the Supreme Court and it is to this decision that we must look for guidance. In United States v. O'Malley, 383 U.S. 627, 86 S.Ct. 1123, 16 L.Ed.2d 145 (1966), the settlor created five trusts, two for each of two daughters and one for his wife. The settlor was one of three trustees of the trusts, each providing that the trustees, in their sole discretion, could pay trust income to the beneficiary or accumulate the income, in which event it became part of the principal of the trust. In reliance upon Section 811(c) (1) (B) (ii)—the predecessor of Section 2036(2)—the Court held

that the power to accumulate or distribute income would necessitate including the original principal of the trust and the accumulated income in the gross estate of the settlor. The Court based its decision upon the following reasoning:

"Section 811(c) (1) (B) (ii), which originated in 1931, was an important part of the congressional response to May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, and its offspring and of the legislative policy of subjecting to tax all property which has been the subject of an incomplete *inter vivos* transfer. \* \* \* The section requires the property to be included not only when the grantor himself has the right to its income but also when he has the right to designate those who may possess and enjoy it. Here Fabrics (the settlor-trustee) was empowered, with other trustees, to distribute the trust income to the income beneficiaries or to accumulate it and add it to the principal, thereby denying to the beneficiaries the privilege of immediate enjoyment and conditioning their eventual enjoyment upon surviving the termination of the trust. This is a significant power, see Commissioner of Internal Revenue v. Estate of Holmes, 326 U.S. 480, 487, 66 S.Ct. 257, 260, 90 L.Ed. 228, and of sufficient substance to be deemed the power to 'designate' within the meaning of § 811(c) (1) (B) (ii)."

In the present case the settlor had, by retaining the power to accumulate or distribute income, the power to deny to the beneficiaries "the privilege of immediate enjoyment \* \* \* conditioning their eventual enjoyment upon surviving the termination of the trust."[1]

---

1. Plaintiffs contend in their brief that since the transfer of the properties in trust complied with the provisions of 26 U.S. C.A. Section 2503, relating to the transfer of gifts to minors, it should also be considered a completed *inter vivos* transfer under the provisions of Section 2036, however, the answer to this contention is found in the following remarks of the

Tax Court in Estate of Varian v. Commissioner, 47 T.C. 34, affirmed, per curiam, 396 F.2d 753 (9th Cir. 1968):

"Finally, the fact that Congress conferred limited gift tax benefits on trusts of the type involved herein, through the enactment of section 2503, in no way justifies, as petitioner suggests, the conclusion that the legislature intended to

See also Joy v. United States, 272 F. Supp. 544 (E.D.Mich.1967). Under these circumstances, and in view of the reasoning applied in *O'Malley*, it is the decision of this Court that the date of death values of the assets of the four trusts created by William McClellan Ritter, II, should be included in his gross estate for estate tax purposes.

## INCLUSION OF THE COST OF THE HOUSE PURCHASED IN AUGUSTA, GEORGIA, IN THE ALLOWABLE MARITAL DEDUCTION

In denying inclusion of the cost of the house purchased in Augusta, Georgia, in the allowable marital deduction, the defendant contends, (1) that under testator's will a house in Huntington, West Virginia, to be purchased for his widow by his executors, passed to her and that the reimbursement to her by the executors of the cost of a house she purchased in Augusta, Georgia, was contrary to the express terms of the will and, therefore, did not "pass" from testator to his surviving spouse as required by the provisions of 26 U.S.C.A. Section 2056 and (2) that in any event the interest passing to the surviving spouse was a "terminable" interest and did not, for that reason, qualify under the marital deduction provision.

■ The defendant, in asserting that the payment to testator's widow did not "pass" from the testator as contemplated by Section 2056, argues that the state court decree was erroneous insofar as it permitted reimbursement for the home in Augusta in lieu of the purchase of a residence in Huntington, West Virginia. As was pointed out by defendant in its brief, this Court is not bound in a Federal estate controversy by state court adjudication of property rights or characterization of property interests where the United States was not a party to the proceeding. See Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). However, as was pointed out in the *Bosch* case, "proper regard" must be given to such rulings, and, under the view we take of the law of the state of West Virginia, it is the opinion of this Court that the decree of the Circuit Court of Cabell County was correct and that, as a consequence, an interest passed to the surviving spouse under the will of the testator, which interest was satisfied by the reimbursement to the spouse by the executors for the cost of the house purchased in Augusta, Georgia.

■ In permitting testator's widow to take money necessary to purchase a house in Augusta, Georgia, in lieu of residence property in Huntington, West Virginia, the Circuit Court of Cabell County was simply recognizing the beneficiary's right to elect to receive the bequest in the form of personalty rather than in the form of realty. Such an election, referred to as "reconversion," may be utilized where the testator has directed that money be used to purchase real property and the beneficiary of the bequest "elects" to take in lieu thereof an equivalent amount in money rather than the land itself. See 27 Am.Jur.2d Equitable Conversion, Section 17 (1966). As was stated by the Court in Brown v. Miller's Executors, 45 W.Va. 211, 31 S.E. 956 (1898).

"It is well known that where a will or deed directs land to be sold and converted into money, or money to be invested in land, it operates as a conversion, the land assuming the character of personalty, and the money that of land, before actual conversion, and it passes to those taking under the will or deed as personalty or realty, ac-

---

exclude such trusts from the estate tax. Indeed, the contrary position could be asserted by noting that, when Congress wanted to exclude the instant type of power as a determinant of the taxability of trust income to the donor, it did so specifically. Section 674(b) (6) and (7). Nor is it significant that practically all of the States have enacted the Uniform Gifts to Minors Act. Surely, State action cannot be indicative of legislative intent for purposes of the Federal estate tax."

cording as the conversion is from the one to the other. * * * *But the party entitled to the beneficial interest may frustrate actual conversion by the exercise of the right of election,* under circumstances. Being entitled to the subject, he may take the land or the money in its original shape." (Emphasis added.)

In the circumstances of this case we find, as did the Circuit Court, that the prime intent of the testator, in inserting in his will the purchase of a residence for his wife provision, was to make sure that she and their children would have a suitable home. From a reading of her deposition and that of Colonel E. E. Ritter, his father, we feel, as did the Circuit Court, that the location of the home was but incidental to this main objective. When the will was made, they had only lived in Augusta, Georgia, for a comparatively short time, having moved there from Salem, Virginia. His employment with the Georgia-Pacific Company dictated the move. Huntington appears to have been not only his childhood home, but hers as well. It was, therefore, only natural for him to have assumed that she would want to return to Huntington after his death. There is nothing in the will itself or in the record to suggest otherwise. Nor is there anything in the will or the record to suggest that this provision for her was made solely upon the condition that she return to and live in Huntington. Absent such a condition, she did not forfeit the provision by electing to purchase a residence elsewhere. If he had wished to impose such a restriction upon her domicile, the testator, a highly experienced and successful businessman, would have undoubtedly made specific provision therefor in his will. Moreover, the "election" authorized and sanctioned by the state court, in reality, worked no harm to the defendant, for the sum involved

would concededly have qualified for inclusion in the allowable marital deduction had it been used for the purchase of a home in Huntington. Viewed in this light, equitable considerations may be balanced against the highly technical approach contended for by the defendant. Thus balanced, the doctrine enunciated in *Bosch* for giving "proper regard" to the state court decision becomes more meaningful and should be applied. We accordingly find that the reimbursement in question "passed" from the decedent to his widow under the provisions of the will as contemplated by Section 2056.

 Finally, the defendant contends that the amount of the reimbursement for the purchase of the house in Augusta, Georgia, should be excluded in computing the marital deduction on the ground that the interest which passed under the will was a "terminable" interest [2] subject to a possible failure upon the death of the testator's spouse prior to the actual purchase of the residence property. In determining whether or not the interest passing to testator's spouse under the will was terminable, resort must be had to the intention of the testator as expressed by the terms of the will, and such expressed intention, unless contrary to some rule of law, governs the effect to be given to the disposition. Wooddell v. Frye, 144 W.Va. 755, 110 S.E.2d 916, 918 (1959); Security National Bank & Trust Co. v. Willim, 158 S.E.2d 715 (W.Va.1968). Initially, it should be noted that the devise of the residence property is, by its terms, unconditional and not expressly made the subject of any contingency. Further, no proviso is attached to the devise conditioning its effect upon the wife's survival until such time as a residence property should be purchased, but, to the contrary, the devise is couched in absolute terms, the testator stating that by his will he

---

2. Section 2056 of the Internal Revenue Code disallows, for the purposes of the marital deduction, interests passing from the decedent to his surviving spouse where, "on the lapse of time, on the oc-

currence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail * * *."

devised to his wife "a residence in Huntington, West Virginia." In like terms, the bequest of an adequate sum to the executors for the purchase of the residence property is made absolute and not conditioned upon the survival of testator's spouse until such time as an actual purchase should take place. It might be, of course, that the testator intended that his wife should take under the will only if she survived to a certain date, however, such supposition is mere conjecture. This Court is bound to give effect to the literal meaning of the testator's words and "not to do violence to that meaning in order to write a will for the testator which would seem to the court more sensible than the will he actually wrote." Dickson v. United States, 240 F.Supp. 583, 584 (D.C.Md. 1965). The conclusions to be reached in construing the provisions of this will could conceivably have been different had the testator merely bequeathed a sum of money to his executors for the purpose of purchasing a residence for his widow. But this was not done. Instead, he expressly devised unto her a "residence," leaving only the mechanics of carrying it out to his executors. He did not clothe them with any discretion in the matter. Under such circumstances, construing the will according to the expressed intentions of the testator, it would appear that the interest vested in the spouse at the time of the testator's death and that it was, therefore, an absolute rather than a terminable interest. Accordingly, such interest would qualify for inclusion in the marital deduction allowable to the estate of the testator.

## SUMMARY

Upon the basis of the record as submitted by the parties, it is the decision of this Court that the date of death values of the assets of the four trusts created by William McClellan Ritter, II, should be included in his gross estate for estate taxes, and that the interest passing to his widow under his will by reason of the provision for the purchase of a residence qualifies for inclusion in the marital deduction allowable to the estate of the testator.

An appropriate order may be submitted in accordance with the views herein expressed, and, as stipulated, the amount of the refund will be computed by the defendant and submitted to plaintiffs' counsel for approval.